EUGENE F. PETERSON ET AL. *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, JS.

Argued June 13—decided July 27, 1972

*James R. Fogarty, Jr.,* with whom was *Ronald O. Dederick,* for the plaintiffs.

*Ralph G. Murphy,* assistant attorney general, with whom were *John M. Dunham* and *Richard K. Greenberg,* assistant attorneys general, and, on the brief, *Robert K. Killian,* attorney general, for the defendant.

HOUSE, C. J.   Although this case involves many of the same issues which were considered in *Kellems* v. *Brown,* 163 Conn. 478, 313 A.2d 53, decided this

day and to which we will refer as the *Kellems* case, it concerns an earlier act of the legislature enacted as Public Act No. 1 of the June, 1969, special session of the General Assembly, printed as chapter 224, §§ 12-505 through 12-522 of the General Statutes. This act, which we will hereafter refer to as the 1969 act, was repealed effective August 15, 1971, by Public Act No. 8 of the June, 1971, special session of the General Assembly. The action was brought in the nature of an appeal from a decision of the defendant tax commissioner denying the plaintiffs' claim for a refund of a capital gains tax which they had paid. The parties stipulated to the relevant facts and the Superior Court reserved the case to this court for advice.

The plaintiffs are residents of Greenwich, Connecticut. On July 1, 1969, they owned various capital assets which they had acquired prior to that date and which were not situated in Connecticut. During the period from July 1, 1969, through December 31, 1969, they sold or otherwise disposed of those assets in sales or exchanges which were consummated through brokerage firms in New York, where all deliveries occurred. On or before April 15, 1970, they timely filed, on a form prescribed by the tax commissioner, a Connecticut Capital Gains Tax Return for the period July 1 through December 31, 1969, and paid a tax of $17,701.56. This return is hereafter referred to as the "original return." In accordance with the directions of the tax commissioner, the plaintiffs computed their net capital gain in their original return by deducting the adjusted basis, i.e., the cost of the capital assets, from the proceeds derived from the sales and exchanges. On or about July 1, 1970, the plaintiffs filed an amended return covering the same period. This

return computed taxable gain or loss by subtracting the fair market value of the assets on July 1, 1969, or their original cost, whichever was greater, from the proceeds derived from their sale or exchange. The resulting computation in their amended return showed a net capital loss. The plaintiffs have claimed a refund of $17,701.56 as an overpayment of their capital gains tax which claim for a refund was denied by the tax commissioner on October 1, 1970. The plaintiffs exhausted all administrative remedies available to them and thereupon took the present appeal. The defendant contends that the plaintiffs' amended return was inaccurate only because it used as the basis for computing capital gain or loss the greater of the plaintiffs' original cost of the assets sold or exchanged or the fair market value thereof as of July 1, 1969.

Section 12-505 of the 1969 act contained definitions.[1] Section 12-506 (a) contained the language imposing the tax,[2] and § 12-518 authorized the tax

---

[1] "[General Statutes] Sec. 12-505. DEFINITIONS. When used in this chapter, unless the context otherwise requires: 'Taxpayers' means each and every individual resident in this state who has earnings received, credited or accrued in any taxable year from gains from the sale or exchange of capital assets which exceed the sum of one hundred dollars; 'taxable year' means the same accounting period as the taxpayer's taxable year for federal income tax purposes or that portion of such year as falls within the period July 1, 1969, through June 30, 1971; 'tax commissioner' or 'commissioner' means the state tax commissioner; 'gains from the sale or exchange of capital assets' means 'net gain' as that amount is computed under the internal revenue code of the United States, except that no reduction shall be allowed for loss carry-overs or loss carry-backs."

[2] "[General Statutes] Sec. 12-506. IMPOSITION OF TAX. (a) A tax is hereby imposed at the rate of six per cent on all gains from the sale or exchange of capital assets occurring after July 1, 1969, which gains have been earned, received, accrued or credited to the taxpayer during his taxable year. This tax shall not be applicable to gains on the sales or exchanges of capital assets occurring after June 30, 1971."

commissioner to adopt and enforce rules and regulations relating to the administration and enforcement of the tax.[3] Eight questions were reserved for the advice of this court. In their brief the plaintiffs have indicated that two of these need not be answered. The remaining six questions are printed.[4]

Basically, it is the contention of the plaintiffs that the tax commissioner incorrectly interpreted the 1969 act when he denied their claim for a refund, or,

---

[3] "[General Statutes] Sec. 12-518. ENFORCEMENT. REGULATIONS. The commissioner shall enforce the provisions of this chapter and may adopt and enforce rules and regulations relating to the administration and enforcement of this chapter. The commissioner may prescribe the extent to which any ruling or regulation shall be applied with retroactive effect."

[4] "1. In computing the plaintiffs' capital gain on the difference between the amount realized from the sale or exchange of said capital assets and the adjusted basis, i.e. the cost, of such assets, has the defendant Tax Commissioner properly determined the capital gain to be subject to tax pursuant to the Act?

"2. In denying the plaintiffs' claim for refund has the defendant Tax Commissioner improperly determined the capital gain to be subject to tax pursuant to the Act?

"3. If the answer to (1) is 'Yes,' or the answer to (2) is 'No,' does the tax imposed upon the plaintiffs' capital gains under the Act violate the provisions of Section 55-3 of the General Statutes of Connecticut, Revision to 1958, as amended?

"4. Does the tax imposed upon capital gains under the Act deprive the plaintiffs of their property without due process of law as guaranteed by Section 1 of the Fourteenth Amendment to Constitution of the United States of America and by Article 1, Section 8 of the Constitution of the State of Connecticut?

"5. Does the tax imposed upon capital gains under the Act deprive the plaintiffs of the equal protection of the laws so as to violate Art. I, Section 20 of the Constitution of the State of Connecticut or the Fourteenth Amendment of the Constitution of the United States of America?

.        .        .        .        .

"7. With respect to the plaintiffs, has there been an unlawful delegation of legislative power created in the Act due to the defining of certain terms with reference to the Internal Revenue Code of the United States?"

alternatively, that if his interpretation of that act was correct, then the act itself is unconstitutional.

Although the language of the 1969 act differs somewhat from that of the 1971 act, the same basic questions of statutory interpretation and constitutionality which we discussed at length in the *Kellems* case are presented by this appeal. Consequently it is neither necessary to repeat in detail much of what we said in the opinion in that case, nor productive to quote extensively from the authorities therein cited and relied on.

The definition of "gains from the sale or exchange of capital assets" in the 1969 act differs slightly from that used in the 1971 act. The 1969 act (§ 12-505) defines it "as that amount is computed under the Internal Revenue Code of the United States, except that no reduction shall be allowed for loss carry-overs or loss carry-backs." The definition in the 1971 act (§ 12-505), which is somewhat longer but similarly keyed to the Internal Revenue Code, states that it means "net gains as defined for federal income tax purposes, after due allowance for losses and holding periods, but not nonrecognition of gains, all as provided under federal income tax law." As we noted in the *Kellems* case, the federal capital gains tax which both the 1969 and 1971 acts incorporate is predicated on the concept of taxing the realization of capital gain. "Realization of the gain is the event which calls into operation the taxing act, although part of the profit realized in one accounting period may have been due to increase of value in an earlier one." *MacLaughlin* v. *Alliance Ins. Co.,* 286 U.S. 244, 249, 52 S. Ct. 538, 76 L. Ed. 1083; see also the cases cited on this point in the *Kellems* case. As we pointed out in the *Kellems* case, it is the event of realization of gain by the sale or exchange of a

capital asset which is the time fixed for the imposition of the tax. The fact that the gain may be the result of a gradual increase in the value of the asset over a period of years is of no consequence. By the 1969 act the tax is imposed on such gains "occurring after July 1, 1969." § 12-506. By the 1971 act it is on such gains "occurring after December 31, 1970." § 12-506. As both acts specifically incorporate the federal system of taxing capital gain, the defendant tax commissioner was correct in holding that the cost basis for determining the amount of the plaintiffs' capital gain should be determined under the provisions of the federal Internal Revenue Code which is, generally, cost.[5]

We deem it unnecessary to discuss at length the remaining contentions of the plaintiffs since they are substantially similar to those advanced and decided in the *Kellems* case. As we there indicated, a tax on the realization of capital gains does not operate in a constitutionally impermissible and retroactive manner merely because the amount of the taxable gain is determined by the difference between the proceeds from the sale or exchange and the basis to the taxpayer which, as we have indicated, is usually his cost but may be the fair market value on March 1, 1913, if the asset was owned by him prior to that date. Nor, for the reasons discussed in the *Kellems* case, do we find that the 1969 act unlawfully delegated powers to the tax com-

---

[5] Under the provisions of § 1053 of the Internal Revenue Code, if the asset was purchased by the taxpayer prior to March 1, 1913, then his basis, subject to adjustment, is the fair market value of the asset on March 1, 1913. In addition, there are numerous other sections of the Internal Revenue Code which define, adjust or allocate a taxpayer's basis depending on the circumstances surrounding a transaction. See, for example, Internal Revenue Code §§ 301 (d), 301 (f), 307, 1336, and others.

missioner or to the Congress of the United States. We note that as in the 1971 act the 1969 act did not expressly provide whether the reference to the Internal Revenue Code of the United States was intended to refer only to the code as it existed at the time of the passage of the 1969 act or was intended to include any amendments to the code which Congress might subsequently enact. It does appear that subsequent to the enactment of the 1969 act Congress did, by §§ 511 to 516 of the Tax Reform Act of 1969 (83 Stat. 635–647), amend the federal tax laws with respect to the taxation of capital gains. These amendments, however, were effective only with respect to taxable years beginning after December 31, 1969, and, as the stipulation of the parties in this case discloses, the transactions which resulted in the realization of capital gains by the plaintiffs all occurred in the 1969 tax year between July 1 and December 31, 1969—all before the effective date of any amendments to the federal income tax law as it existed when the 1969 act was adopted. So far as these plaintiffs and this case are concerned, it is unnecessary to determine the effect of any amendments to the Internal Revenue Code which were made effective subsequent to December 31, 1969.

The Superior Court is advised that question 1 in the reservation is answered "Yes" and questions 2, 3, 4, 5 and 7 are answered "No."

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.