**Louis J. KOCUREK and Millie M. Kocurek, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 78–2761.**

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1980.

Rehearing and Rehearing En Banc Denied Nov. 24, 1980.

Reese L. Harrison, Jr., Stanley L. Blend, San Antonio, Tex., for plaintiffs–appellants.

M. Carr Ferguson, Gilbert E. Andrews, Johnathan S. Cohen, Atty., Karl P. Fryzel, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant–appellee.

Before WISDOM, FAY and TATE, Circuit Judges.

TATE, Circuit Judge.

This is a taxpayer's suit for a refund of income taxes paid. 28 U.S.C. § 1346(a)(1). The taxpayers appeal from denial of their refund. See *Kocurek v. United States*, 456 F.Supp. 740 (W.D.Texas, 1978).

Before us is an issue of first impression. It concerns the application and construction of several sections of the Internal Revenue Code of 1954, as amended, Subtitle A–26, Income Taxes, 26 U.S.C. §§ 1–1552. The issue involves the proper characterization of a distribution from a regulated investment company (popularly known as a "mutual fund"), sections 851–55, I.R.C., for purposes of determining the limitation on investment interest allowable as a deduction under section 163(d).

The taxpayers contend that a "capital gain *dividend*," section 852(b)(3)(C), distributed to a mutual's shareholders must be characterized as a "dividend," while the government contends that the "*capital gain*

dividend" should be characterized as a "capital gain." Under the law then in effect, although either characterization had the effect of permitting the taxpayers to increase their allowable investment interest deduction,[1] a "capital gain"–to the extent it was used by the present taxpayers to increase their allowable investment interest deduction–was correlatively taxable at ordinary income (instead of capital gains) rates, section 163(d)(5) (1969).[2] We agree with the district court that, under sections 163(d) and 852(b)(3)(B) of the Code, a "capital gain dividend" is more properly characterized as a "capital gain" than as a "dividend"; accordingly, we affirm the denial of the refund sought.

I

The issue before us involves the interrelationship of the statutory language and legislative concepts and purposes of sections 163(d) (providing for limitations on the investment interest deduction), see II below, and 852(b) (allowing certain tax advantages to shareholders in mutual funds) of the Code, see III below. It also involves the taxpayers' contention that the general definition of a "dividend" provided by section 316(a), see IV below, was intended to include the "capital gain dividend", as defined by section 852(b)(3)(C) of the tax provisions relating to regulated investment companies

---

1. See Section 163(d)(1)(B) ("dividend") and (C) ("capital gain"), I.R.C., as added by section 221(a) of the Tax Reform Act of 1969, Pub.Law 91-172, 91st Cong. 1st Sess., approved 1969.

In 1976, Congress repealed Section 163(d)(1)(C) (which allowed capital gains to increase the amount of the allowable investment interest deduction), at the same time repealing Section 163(d)(5) (which required capital gains thus favored to be taxable as ordinary income). See section 209(a), Tax Reform Act of 1976, Pub.Law 94-455, 94th Cong. 2d Sess., approved 1976. The purpose was to strengthen the limitation on the deductibility of investment interest in order to reduce the possible use of the investment interest deduction as a shelter for non investment types of income. Joint Committee Explanation of the Tax Reform Act of 1976 (1976), reprinted in Cum.Bull. 1976-3, pp. 3 at 103.

Thus, although the preferential use of capital gains to increase the allowable investment in-

terest deduction has been abolished by the 1976 revision, the issue of whether a capital gain dividend is characterizable as a "dividend" for section 163(d) tax purposes is of even greater importance under current law: If capital-gains dividends are characterized as "dividends" for 163(d) purposes, then a shareholder–taxpayer receiving these corporate distributions will not only be taxed at favorable capital gains rates on them, but he will nevertheless be enabled to increase his allowable investment interest deduction in the amount of such capital gain. The 1969 Act had permitted such use, but required as a correlative counter balancing adjustment that, if the taxpayer elected to use to increase his investment interest deduction by capital gains (a use of capital gains permitted by the 1969 Act), the capital gains so used were taxable as ordinary income. See III *infra*.

2. See note 1 *supra*.

("mutual funds"). In general, the latter provisions permit a pass–through of net long–term gains to a shareholder (without corporate tax–liability), who is then statutorily entitled, section 852(b)(3)(B), to treat such distributions as a long–term capital gain rather than as ordinary income.

Before setting forth the statutory provisions and their relationship, we note the stipulated facts of this litigation:

The taxpayers used $43,298.00 (in 1973) and $79,963.00 (in 1974) of the capital gain dividends that they had received from regulated investment companies to increase the net investment income under section 163(d)(1)(B) for purposes of increasing the investment interest deduction allowed. The government disallowed these amounts under this section, its position being that the taxpayers were required to report them under section 163(d)(1)(C) as long–term capital gains, if the taxpayers chose to use these capital–gain amounts to increase their allowable investment interest deduction. Under section 163(d)(1)(C), these amounts became subject to an adjustment under section 163(d)(5) from capital–gain income to ordinary income, to the extent that such capital–gain income was used to increase the allowable investment interest deduction.

Because the taxpayers were required–if they elected to use the mutual funds distributions to increase their allowable investment interest deduction–to treat these capital gain dividends as long–term capital gains under section 163(d)(1)(C), their taxes were increased in the amount of $13,826.00 in 1973 and $17,895.00 in 1974, as compared to the amount due if their investment interest deduction was increased by the characterization of these capital–gain distributions as "dividends." This suit is for refund of these amounts.

3. Section 163(a) provides: There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

4. Public Law 91–172, 83 Stat. 487.

## II

The threshold issue involves a consideration of section 163(d), as enacted by the Tax Reform Act of 1969. In order to correct perceived abuses, the Congress enacted a limitation on interest previously deductible from gross income insofar as applicable to interest on investment indebtedness–i. e., "investment interest", or that "paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment", section 163(d)(3)(D). As more explicitly stated below, in the computation of the allowable investment interest deduction, the taxpayer was permitted by the original enactment to increase it by the amounts of both "dividends", (d)(1)(B), (d)(3)(B), and "net long–term capital gains", (d)(1)(C), received or accrued during the tax year. However, to the extent that a taxpayer elected to use *capital gains* to increase his allowable investment interest deduction, he was likewise required (by way of a balancing adjustment) to forego favorable capital–gains treatment of the amounts so used by him. Section 163(d)(5).

As noted, the characterization of the "capital gain dividend", see III below, as a "capital gain" rather than as a "dividend" had favorable consequences for taxpayers receiving such distributions from mutual funds. These will be accentuated by a 1976 amendment to section 163(d), which was intended to bar the use of long–term capital gains for purposes of increasing the allowable investment interest deduction (see note 1 *supra* ).

*Background*

Section 163(a) [3] allows a taxpayer to claim as a deduction the amount of interest he has paid during the year on indebtedness. In the Tax Reform Act of 1969,[4] Congress placed a limitation on the amount of interest incurred solely for investment purposes which a taxpayer could deduct, enacted as section 163(d), I.R.C.[5] The

5. Section 163(d), as applicable in 1973 and 1974, relevantly provided (Italics supplied):

    **(d) Limitation on Interest on Investment Indebtedness.–**

    **(1) In general.**–In the case of a taxpayer other than a corporation, the amount of

House Committee Report on section 163(d) [6] evidenced its concern over taxpayers who voluntarily incurred substantial interest expenses on funds borrowed to acquire investment assets. It noted that

> [w]here the interest expense exceeds the taxpayer's investment income, it, in effect, is used to insulate other income from taxation. For example, a taxpayer may borrow substantial amounts to purchase stocks which have growth potential but which return small dividends currently. Despite the fact that the receipt of the income from the investment may be postponed . . . , the taxpayer will receive a current deduction for the interest expense even though it is substantially in excess of the income from the investment.[7]

> investment interest (as defined in paragraph (3)(D)) otherwise allowable as a deduction under this chapter shall be limited, in the following order, to—
> (A) $25,000 ($12,500, in the case of a separate return by a married individual), plus
> (B) the amount of the *net investment income* (as defined in paragraph (3)(A)), plus the amount (if any) by which the deductions allowable under this section (determined without regard to this subsection) and sections 162, 164(a)(1) or (2), or 212 attributable to property of the taxpayer subject to a net lease exceeds the rental income produced by such property for the taxable year, plus
> (C) an amount equal to the amount by which the net *long–term capital gain* exceeds the net short–term capital loss for the taxable year, plus
> (D) one–half of the amount by which investment interest exceeds the sum of the amounts described in subparagraphs (A), (B), and (C).
> In the case of a trust, the $25,000 amount specified in subparagraph (A) and in paragraph (2)(A) shall be zero. In determining the amount described in subparagraph (C), only gains and losses attributable to the disposition of property held for investment shall be taken into account.

> (3) **Definitions.**–For purposes of this subsection–

> (B) Investment income.–The term "investment income" means–
> (i) the gross income from interest, *dividends*, rents, and royalties[.]

Congress sought to rectify the resultant mismatching of the investment income with the related expenses of earning that income, which occurred when the taxpayer was allowed a current deduction for interest and where the taxpayer's investment, however, produced little current income.[8] The Congress addressed this perceived abuse by enacting 163(d), which *limited* the amount of investment interest allowable as a deduction.

## Section 163(d)'s Application to the Present Facts

Section 163(d) sets forth the formula to be used in computing this limitation. Two factors are of particular importance to the instant case:

> (5) **Capital gains.**–For purposes of sections 1201(b) (relating to alternative capital gains tax), 1202 (relating to deduction for capital gains), and 57(a)(9) (relating to treatment of capital gains as a tax preference), and amount equal to the amount of investment interest which is allowable as a deduction under this chapter by reason of subparagraph (C) of paragraph (1) shall be treated as gain from the sale or other disposition of property which is neither a capital asset nor property described in section 1231.

(As enacted in 1969, and prior to its amendment by Pub.Law 92–278 (1971), (d)(1)(B) read: "the amount of the net investment income (as defined in paragraph (3)(A)), plus . . .")

6. House Report 91–413 (1969), U.S.Code Cong. & Admin.News 1969, p. 1645, reprinted in Cum. Bull. 1969–3, p. 245.

7. *Id.*, U.S.Code Cong. & Admin.News 1969, p. 1718.

8. *Id.* In addition to the House Committee Report 91–413, tax commentators have generally regarded that the purpose of section 163(d) was to discourage "abuse of the interest deduction." See: Rockler, *Interest: Impact of 1969 Act; Use and Misuse of Interest Deduction; Statutes of Tax Exempt Interest*, New York University Twenty–Ninth Annual Institute on Federal Taxation, 1493, 1512 (1971); Gabinet, *The Interest Deduction: Several New Installments in a Continuing Saga*, 21 Case W.Res.L.R. 466, 494 (1970); McCullom, *Making the Most of the Investment Interest Limit Imposed by the New Tax Law*, 32 J. Tax 286, 288 (1970).

1. Section 163(d)(1)(B) [9] allows the interest limitation to be increased by the "net investment income." Net investment income is defined in 163(d)(3)(B)(i) as "the gross income from interest, *dividends*, rents, and royalties." (Italics supplied.); and,

2. Section 163(d)(1)(C) [10] permitted the taxpayer to increase the amount of investment interest allowable as a deduction also by long–term capital gains he claimed for this purpose. However, if the taxpayer elected to use long–term capital gains for the purpose of increasing his allowable investment–interest deduction, Section 163(d)(5) [11] required as a counterbalancing adjustment that the amount so used should be treated as ordinary income.

The issue before us is whether, for purposes of increasing the investment interest deduction allowed by section 163(d), a "capital gain dividend," section 852(b)(3)(C), distributed to a mutual fund's shareholders is a "dividend" under 163(d)(1)(B) and (d)(3)(B)(i), or instead a "capital gain" under 163(d)(1)(B). Before addressing this issue, we must first look at the statutory context in the taxation of regulated investment companies ("mutual funds") in which this term is defined.

### III

Sections 851–55 of the Internal Revenue Code of 1954 provide special rules for taxation of regulated investment companies often referred to as "mutual funds." The general concept was to encourage the pooling of investment funds by taxpayers; through its election to be taxed under these provisions, in general the corporation is taxed only on undistributed income, while the shareholders report the distributed income as ordinary income or capital gain, as the case may be. 7 Mertens, The Law of Federal Income Taxation, Chapter 41, §§ 41.01–.02 (1976 rev.) (hereinafter, "Mertens"); Bittker and Eustice, Federal Taxa-

tion, ¶ 1.06 (4th ed. 1979); Rubin, *Regulated Investment Companies*, 28 Taxes 541 (1950). As summarized by the congressional committee reports concerning these special taxation features:

Regulated investment companies which meet various requirements with respect to asset diversification, capital structure and operations and which distribute at least 90 percent of their ordinary income are treated as conduits of income and taxed only on their undistributed income. Dividends paid by such companies are taxed in the usual manner to shareholders *except that dividends arising from capital gains realized by the company are identified and receive capital gains treatment in the hands of the recipient.* This method permits investors to pool their funds through the use of a corporation in order to obtain skilled, diversified investment in corporate securities without having to pay an additional layer of corporate tax. (Italics supplied.)

H.R.Rep., p. 4017 at 4099, and Sen.Rep., p. 4621 at 4734, on H.R. 8300 (Internal Revenue Code of 1954), as reprinted in [1954] 3 U.S.Code Cong. & Admin.News.

The issue before us involves the characterization as either "dividend" or else "capital gain," for purposes of section 163(d), of the "capital gain dividend" provided by these special mutual–funds taxing provisions.

The relevant provisions are: In the calculation of the corporate tax on its capital gains, the taxable amount is reduced by a dividend deduction determined by reference to the capital gain dividends paid to the shareholders. Section 852(b)(3)(A); Mertens, § 41.05. The 1954 Code further provided: "A capital gain dividend shall be treated *by the shareholder* as a gain from the sale or exchange of a capital asset held for more than 6 months," [12] section

---

**9.** See note 5, *supra*.

**10.** See note 5, *supra*. This provision was deleted by 1976 legislation. See note 1, *supra*.

**11.** See note 5, *supra*. This correlative provision was likewise deleted by 1976 legislation. See note 1, *supra*.

**12.** The Tax Reform Act of 1976, Pub.Law 94–455, § 1402(b)(2), substituted "1 year" for taxa-

852(b)(3)(B) (italics ours)–i. e., "capital gains realized by the regulated investment company are transferred to the stockholders for taxation purposes, to the extent that such capital gains are paid over to the stockholders as capital gains dividends," Mertens, § 41.06 at p. 41–7.

Section 852(b)(3)(C) defined a capital gain dividend as "any dividend or part thereof, which is designated by the company as a capital gain dividend in a written notice mailed to its shareholders not later than 30 days [13] after the close of the taxable year."

ble years beginning after 1977, for the "six months" originally provided. (*Id.*, § 1402(b)(1), had substituted "nine months" as applicable for the 1977 taxable year.)

**13.** Pub.Law 88–272, § 229(a) (1964) substituted "45 days" for "30 days."

**14.** As originally enacted by the 1954 Code, § 852(b)(3)(C) in full provided:

(C) *Definition of Capital Gain Dividend.*–A capital gain dividend means any dividend, or part thereof, which is designated by the company as a capital gain dividend in a written notice mailed to its shareholders not later than 30 days after the close of its taxable year. If the aggregate amount so designated with respect to a taxable year of the company (including capital gains dividends paid after the close of the taxable year described in section 855) is greater than the excess of the net long–term capital gain over the net short–term capital loss of the taxable year, the portion of each distribution which shall be a capital gain dividend shall be only that proportion of the amount so designated which such excess of the net long–term capital gain over the net short–term capital loss bears to the aggregate amount so designated.

The effect of the second sentence is that a "capital gain dividend" designated by the corporation is only treated as a "capital gain" distribution by the shareholder to the extent that it reflects the corporation's allowable exclusion from its taxable income of the "net long–term capital gain over the net short–term capital loss," section 852(b)(2)(A). See Mertens, § 41.07. As stated by that treatise, section 41.06 at p. 41–7, "the treatment by the shareholder of such dividends as capital gains dividends . . . is limited to the excess of the net long–term capital gain over the net short–term capital loss of the investment company during the taxable year."

The various post–1954 amendments to this provision are not cited to us as relevant to the issue before us, except that the taxpayers note that the Tax Reform Act of 1969 also amended

In the context of the statutory provisions previously cited, as well as of other mutual–funds taxing provisions,[14] the "capital gain" dividend was a pass–through to the taxpayer of the corporation's long–term capital gain, as if the taxpayer himself had acquired and had sold the property upon which the capital gain was realized. Subject to taxation at the shareholder level only at capital–gains rates, section 852(b)(3)(B), the "*capital gain* dividend" was thus differentiated from the ordinary "dividend", as defined by section 316(a), which (with two specified exceptions[15])

852(b)(3)(C) (by adding a proviso to the last sentence) and 852(b)(3)(D)(iii). They argue that the 1969 amendments to 852(b)(3)(C) and (D) show that Congress was aware of the characterization of the "capital gain *dividend*", but nevertheless did not clarify that such a distribution was not a "dividend" for purposes of § 163(d), enacted by the same 1969 statute. Since (see III and IV of text) we find the taxpayers' premise faulty–that a capital–gain dividend had previously been legislatively classified as a "dividend" for tax purposes–, we are unable to ascribe any significance, with regard to the issue before us, to the 1969 technical amendments to 852(b)(3)(C) and (D).

**15.** The exceptions are set forth in section 316(b). Section 316 (1954) in full provided:

(a) *General Rule.*–For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders–

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

(b) *Special Rules.*–

(1) *Certain insurance company dividends.*–The definition in subsection (a) shall not apply to the term "dividend" as used in sections 803(e), 821(a)(2), 823(2), and 832(c)(11) (where the reference is to

were includable as defined in gross income and taxable at ordinary–income rates. Sections 301(a), 301(c)(1), and 61(a)(7); see, e. g., Bittker and Eustice, cited supra, ¶¶ 7.01, 7.02. (It was unnecessary for the Congress to include capital gain dividends as an additional exception to the 316(a) definition, in the context of the 1954 Code, because by a specific provision relating solely to them, section 852(b)(3)(B), the Code had elsewhere provided for non–dividend ("long–term capital gain") classification of a "capital gain dividend.")

The special taxation provisions for regulated investment companies contain an additional reference to the capital gain dividend. In our view (although the taxpayers draw an opposing inference), it likewise indicates the 1954 Code's legislative intent that the capital gain "dividend" is to be differentiated from the ordinary–income "dividend" defined by section 316(a). Section 854(a) provided: *"Capital Gain Dividend.–*For purposes of section 34(a) (relating to credit for dividends received by individuals, section 116 (relating to an exclusion for dividends received by individuals), and Section 243 (relating to deductions for dividends received by corporations), a capital gain dividend (as defined in Section 852(b)(3)) received from a regulated investment company shall not be considered as a dividend." [16] Thus, in the context of the

dividends of insurance companies paid to policyholders).

(2) *Distributions by personal holding companies.–*In the case of a corporation which–
(A) under the law applicable to the taxable year in which the distribution is made, is a personal holding company (as defined in section 542), or
(B) for the taxable year in respect of which the distribution is made under section 563(b) (relating to dividends paid after the close of the taxable year), or section 547 (relating to deficiency dividends), or the corresponding provisions of prior law, is a personal holding company under the law applicable to such taxable year,
the term "dividend" also means any distribution of property (whether or not a dividend as defined in subsection (a)) made by the corporation to its shareholders, to the extent of its undistributed personal holding company income (determined under section 545

1954 Code, the capital gain dividend was not only treated as a "capital gain" rather than a "dividend" for purposes of a capital–gain rate favorable to the taxpayer; it was also *not* treated as a "dividend" for purposes of deduction and exclusion treatment favorable to the shareholder that was afforded corporate dividends by the Code.

We therefore agree with the district court as to the legislative intent reflected with regard to the "capital gain dividend" as provided for by the special taxing regulation of the regulated investment companies (mutual funds) enacted as sections 851–55 of the Internal Revenue Code of 1954. This intent indicates that the "capital gain dividend" was intended to be treated as a "capital gain" and not as a "dividend" and that, in function and effect, a capital–gain–dividend was generically different from an ordinary–income–dividend. Although denoted as a "capital gain *dividend,*" in its special context the term "dividend" so used did not have as its intended meaning or effect any of the tax consequences of a "dividend" as defined by section 316(a). Although under corporation law technically a "dividend" distribution, in actual fact for tax–law purposes the "capital gain dividend" was a non–taxable (at the corporation level) transfer to the taxpayer of the capital gain acquired by the investment corporation.[17]

without regard to distributions under this paragraph) for such year.

16. When more favorable shareholder tax treatment on corporate dividends was afforded by Pub.Law 88–272 (1964), conforming amendments to section 854(a) were made to reflect them by striking out "the credit under section 34(a)" and the comma after "section 116." See 78 Stat. 19 at 32, section 201(d)(8) of statute.

17. Indeed, had conventional corporation law permitted the distribution to be characterized as a "capital gain *transfer*"–in accord with the functional intent of the special taxing regulation–, then the basis of much of the present taxpayers' argument, see IV, would evaporate. They argue essentially upon the theory that the use of the word "dividend" in the description of a corporate distribution, even if qualified by a limiting description, must inexorably for all purposes ascribe to that distribution the tax–consequences applicable to (ordinary–income)

## IV

The issue before us involves Section 163(d), enacted by the Tax Reform Act of 1969, with its intended effect of limiting the deduction of investment interest. See II of opinion *supra*. In permitting a taxpayer to increase the allowable deduction, the legislation permitted both *"dividends"*, section 163(d)(1)(B), (d)(3)(B)(i), and "long-term *capital gain*" to be used, section 163(d)(1)(B). However, if the taxpayer elected to use a capital gain for this purpose, to the extent so used a capital gain was adjusted so as to be taxable at ordinary-income rates. Section 163(d)(5) (1969).[18]

The taxpayers argue that a "capital gain dividend" should be characterized for 163(d) purposes as a "dividend" instead of a capital "gain," despite the legislative provision specifically declaring that "[a] capital gain dividend *shall* be treated by the shareholders as a gain from the sale or exchange of a capital asset," Section 852(b)(3)(B) (italics supplied). The taxpayers not unpersuasively argue that a "dividend" is defined for all income tax purposes by section 316(a), except where specifically excluded from the "dividend" definition; and that the 316(a) definition includes within its literal terms a "capital gain dividend," a distribution from the corporation out of its current or prior earnings.[19]

We have previously determined, however, that, as used in sections 851–55 pertaining to special taxation regulation of mutual funds, the "capital gain dividend" was legislatively intended to be a "capital gain" transfer rather than a "dividend" in the tax sense. See III of opinion above.

The taxpayers forcefully argue that nevertheless a "capital gain dividend" should be characterized as a "dividend" as well as a "capital gain," (1) because section 316(a) excepted only two categories of dividends from its definition (and *not*, addition-

ally, a "capital gain dividend"), and (2) because section 854(a) with specific reference to a "capital gain dividends" provides for only specific limited non–dividend effect to such a distribution. This contention essentially relies upon an inclusio–unius–est–exclusio–alterus argument (the inclusion of one is the exclusion of the other) to support a logical deduction of legislative intent that a "capital gain dividend" is to be considered a "dividend" for all purposes not by specific statutory provision excepted from the effects of being within the statutory definition. Previously, see III *supra* (text at notes 15 and 16), we have already noted why, in the context of the 1954 Code, an inference of such legislative intent should not be made: (1) it was not necessary for section 316(a) to specify that capital gains dividends were excluded from the definition of "dividends," since by providing that they be treated as capital gains, section 852(b)(3)(B), the Code had elsewhere functionally excepted them from the definition; and (2) section 854(a)'s provision for non–dividend effects of the "capital gain dividend", rather than indicating an intent that it be treated otherwise as a "dividend" for all other purposes, merely illustrated the statutory intent that a true capital–gain dividend be differentiated from an ordinary–income dividend.

Section 163(d), enacted in 1969 subsequent to the 1954 statutory classification of a capital gain dividend as a "capital gain" rather than as a "dividend," cannot be regarded in our opinion as intended to change this classification for income tax purposes. The legislative silence on the issue by itself permits a judicial inference that no change was intended. Further, the legislative history reflects no reason why a capital gains dividend, already affording a taxpayer extremely favorable tax treatment (see III *supra* ), should be used to increase the allowable investment interest deduction with-

---

"dividends," unless exempted from them by some specific "dividend" exception.

**18.** Section 163(d), as applicable to this litigation before amendment, is set forth in relevant part in note 5 *supra*.

**19.** Section 316(a) is set out in full in note 15 *supra*.

out being subject to the same adjustment to ordinary–income treatment required of all other capital gains so used, at least in legislation specifically designed to limit the amount of investment interest allowable as a deduction (see II above). As the district court concluded, *supra* at 456 F.Supp. 743–44 (footnotes omitted):

> Prior to the 1969 amendments there was no limitation on the amount of interest which a taxpayer could deduct, particularly for interest expenses on funds borrowed to acquire investment assets. Subsection (d) of section 163 was proposed to impose such a limitation. In explaining the operation of this limitation upon interest on investment indebtedness, the House Report stated that such ". . . interest which is in excess of $25,000 would first offset the amount of the taxpayer's net investment income *taxed as ordinary income.*" H.R.Rep.No. 91–413, 91st Cong., 1st Sess., reprinted in [1969] U.S.Code Cong. & Admin.News, pp. 1645, 1718–1720 (emphasis added).[20] It was originally intended, therefore, that investment income taxable as ordinary income was to be classified separately from items taxable as capital gains. This amendment was deleted by the Senate and later reappeared in the conference substitute. Although the above quoted language was omitted from their report, the Conference Committee followed the House provisions as modified. Cong. Rep.No. 91–782, 91st Cong., 1st Sess., reprinted in [1969] U.S.Code Cong. & Admin.News, pp. 2392, 2414–2415.

> Finally, additional support for the government's position can be drawn from an analysis of the minimum tax on tax preference items which was also included as a part of the Tax Reform Act of 1969. Section 163(d)(5) makes reference to the minimum tax on capital gains which are included as a tax preference item by section 57(a)(9). The proposed Treasury Regulations provide that capital gain dividends are to be included as a tax preference item. The Senate Report explains that shareholders are to be subject to minimum tax for those capital gains items which are passed through the corporation to them. S.Rep.No. 91–552, 91st Cong., 1st Sess., reprinted in [1969] U.S. Code Cong. & Admin.News, pp. 2027, 2148. For purposes of the minimum tax, therefore, capital gain dividends are to be treated as capital gains, which are included as a tax preference item by section 57(a)(9)(A). Any apparent ambiguity in section 163(d) is thus dispelled.

> After having thoroughly reviewed the relevant statutory provisions and the pertinent portions of the legislative history of the Tax Reform Act of 1969, it is the opinion of this Court that the taxpayers are required under the Code to treat capital gain dividends as capital gains for the purpose of section 163(d), in the same manner that they are required to treat them elsewhere.

*Conclusion*

For the reasons assigned, we find that the capital gain dividend to shareholders by a regulated investment company, sections 851–55, which section 852(b)(3)(B) provides shall be treated by the shareholders as a capital gain, cannot be treated as a "dividend" for purposes of increasing the allowable investment deduction under section 163(d)(1)(B), (d)(3)(B)(i), if claimed for such purpose. Accordingly, we AFFIRM the dis-

---

20. The cited excerpt is contained in the House Report on the Tax Reform Act of 1969, which more fully quoted states: "The limitation provided by the bill would operate in the following manner. Interest subject to the limitation (that is, interest of the specified type) which is in excess of $25,000 would first offset the amount of the taxpayer's net investment income *taxed as ordinary income.* To the extent the interest exceeded the taxpayer's net investment income, it would then be offset against net long– term capital gains. (Long–term capital gains which were offset by interest in this manner would not be taken into account in computing the 50% capital gains deduction). Any interest subject to the limitation which exceeded this amount could not be deducted in the taxable year." H.R.Rep.No. 91–413, 91st Cong. 1st Session, U.S.Code Cong. & Admin.News 1969, p. 1720, reprinted in Cum.Bull. 1969–3, p. 246 (Italics supplied).

trict court judgment rejecting the taxpayers' suit for refund of income taxes.

FAY, Circuit Judge, concurring:

While concurring in Judge Tate's opinion for the court, I add this thought. Taxpayers should not have to "guess" at the meanings of statutory definitions. Prior to this opinion there is no way a reasonably prudent taxpayer could have anticipated this result unless he or she assumed Congress did not mean what it said. Such a situation is wrong and only highlights the need for improved draftmanship by all of those involved. Taxation need not and should not remain a mystery,[1] or worse, a trap.

1. As cited before in *Rickey v. United States*, 592 F.2d 1251, 1256 n.5 (5th Cir. 1979), I am reminded of Chief Judge Kaufman's comment: "We have had occasion to note the striking resemblance between some of the laws we are called upon to interpret and King Minos's labyrinth in ancient Crete." *Lok v. Immigration and Naturalization Service*, 548 F.2d 37, 38 (2d Cir. 1977).