ALLING WOODRUFF ET AL. *v.* TAX COMMISSIONER, STATE OF CONNECTICUT

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued June 10—decision released August 4, 1981

*George G. Vest,* with whom was *William R. O'Neill,* for the plaintiffs.

*Ralph G. Murphy,* assistant attorney general, with whom were *Robert L. Klein,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, and *Richard K. Greenberg,* assistant attorney general, for the defendant.

Bogdanski, C. J. The parties in this case entered into the following stipulation:

"1. The facts upon which the question arises are as follows:

"a. On June 16, 1976, plaintiffs filed a Capital Gains and Dividends Tax return for the year ending December 31, 1975.

"b. Plaintiffs remitted to the State Tax Department tax due in the amount of $1,221.03.

"c. Plaintiffs, in calculating the tax due, did not include in their return receipt of $10,181.65 from The Reserve Fund, Inc., a Maryland corporation, located at 810 Seventh Avenue, New York, New York, 10019 (hereinafter referred to as 'The Reserve Fund').

"d. On July 1, 1976, the Tax Commissioner of the State of Connecticut mailed Notice to plaintiffs stating that additional Capital Gains and Dividends Tax was owed by plaintiffs.

"e. On July 28, 1976, plaintiffs, by their counsel and pursuant to Conn. Gen. Stat. § 12-521, requested a hearing before the State Tax Commissioner to determine the proper Capital Gains and Dividends Tax due.

"f. Said hearing was held on October 14, 1976, at which time plaintiffs' counsel met with officials in the State Tax Department to resolve the controversy.

"g. After said hearing on August 17, 1977, the Tax Commissioner of the State of Connecticut, pursuant to Conn. Gen. Stat. § 12-521, mailed Notice to the plaintiffs stating that he had determined that

a Capital Gains and Dividends Tax in the amount of $712.22 was due and owing to the State of Connecticut plus interest thereon at the rate of 12% per annum from April 15, 1976 to August 15, 1977.

"h. In calculating the Capital Gains and Dividends Tax due to the State of Connecticut, the Tax Commissioner included the monies received by the plaintiffs from The Reserve Funds.

"i. The Reserve Fund is a money market instrument investment fund, under the Investment Company Act of 1940 as amended 15 U.S.C.A. §§ 80a-1 to 80a-52. Its financial structure, purposes, investments and nature of income are accurately described in the Prospectus, dated September 30, 1976, which is accepted and stipulated to by the Parties, and which is attached hereto and incorporated herein by reference as Exhibit A.

"j. During the period in issue, The Reserve Fund was subject to the particular provisions of The Internal Revenue Code, subchapter M. Part I, sections 851-855 and Part III, section 860.

"k. Attached hereto, as Exhibit B is a copy of the Quarterly Summary Statement of the 'Reserve Fund' issued to its shareholders by The Reserve Fund for the fourth quarter of 1975.

"l. In the event that income received by the plaintiffs from The Reserve Fund is determined to be 'interest' income, no additional Capital Gains and Dividend Tax is owed by plaintiffs on monies received from The Reserve Fund.

"m. In the event that income from The Reserve Fund is considered to be 'dividend' income, plain-

tiffs then owe an additional Capital Gains and Dividend Tax for sums received from The Reserve Fund.

"2. The question upon which advice is desired is as follows:

"Are the sums received by the plaintiff from The Reserve Fund, more fully described in the Prospectus attached hereto and incorporated herein by reference, 'dividend' income for purposes of the Connecticut Capital Gains and Dividends Tax, Conn. Gen. Stat. §§ 12-505 et seq?"

Regulated investment companies such as The Reserve Fund are creatures of relatively recent times. They permit investors to have the benefits of diversification and professional financial management. In general, the corporation is taxed only on undistributed income. In order to qualify for this favorable tax treatment, the corporation must satisfy an elaborate network of conditions, of which the salient features are that 90 percent of gross income must be derived from dividends, interest, and gains on the sale of stock or securities, and that the corporation's investments must be diversified. Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders (4th Ed. 1979) ¶ 1.06; 1 Rabkin & Johnson, Federal Income Gift and Estate Taxation (1977) § 2.09; 7 Mertens, The Law of Federal Income Taxation (Rev. to 1976) §§ 41.01—41.20; Rubin, Regulated Investment Companies (1950) 28 Taxes 541. As summarized by the congressional committee reports concerning these special taxation features: "Regulated investment companies which meet various requirements with respect to asset diversification, capital struc-

ture and operations and which distribute at least 90 percent of their ordinary income are treated as conduits of income and taxed only on their undistributed income. Dividends paid by such companies are taxed in the usual manner to shareholders except that dividends arising from capital gains realized by the company are identified and receive capital gains treatment in the hands of the recipient. This method permits investors to pool their funds through the use of a corporation in order to obtain skilled, diversified investment in corporate securities without having to pay an additional layer of corporate tax." H.R. Rep. No. 1337, 83d Cong., 2d Sess., and Sen. Rep., 83d Cong., 2d Sess., reprinted in 3 U.S. Code Cong. & Ad. News (1954), pp. 4099 and 4734 respectively. See *Kocurek* v. *United States,* 628 F.2d 906 (5th Cir. 1980).

The dispute between the parties centers on the definition of "dividends" for the purposes of the Connecticut capital gains and dividends tax. Resolution of this issue is dispositive of the appeal. The plaintiffs contend that Connecticut law does not require that the term "dividends" be given precisely the same meaning for state purposes as for federal purposes. The defendant contends that the legislature intended to incorporate and adopt the federal income tax scheme for taxation of dividends. We agree with the defendant.

The portion of § 12-505 of the General Statutes (Rev. to 1975) pertinent to the question reserved reads as follows: "When used in this chapter, unless the context otherwise requires: . . . 'dividends' means those dividends taxable for federal income tax purposes without regard to the dividend exclusion . . . ."

The capital gains and dividends tax has been before this court in *Kellems* v. *Brown,* 163 Conn. 478, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); see also *Peterson* v. *Sullivan,* 163 Conn. 520, 313 A.2d 49 (1972). In *Kellems* v. *Brown,* supra, this court said (pp. 506–507): "From a close examination of the entire act, it is obvious that the legislature intended to incorporate and adopt the federal basis for computation of capital gain and loss. . . . We find no indication either in the language of the act itself or in its legislative history that the General Assembly intended to adopt any other standard for taxing capital gain than that employed for federal tax purposes to which standard the act makes specific reference." Section 12-505, although it uses slightly different language when referring to the federal law of dividends as opposed to capital gains,[1] nevertheless specifically incorporates the federal system of taxing dividends.

Since the legislature has incorporated and adopted the scheme of federal taxation with respect to capital gains and dividends; *Peterson* v. *Sullivan,* supra; *Kellems* v. *Brown,* supra; the federal taxation of shareholders in regulated investment companies determines the question reserved to the court. Although the plaintiffs concede that the dis-

---

[1] General Statutes § 12-505, at the time of *Kellems* v. *Brown,* 163 Conn. 478, 313 A.2d 53 (1972), defined "gains from the sale or exchange of capital assets" to mean "net gains as defined for federal income tax purposes, after due allowance for losses and holding periods, but not nonrecognition of gains, all as provided under federal income tax law." The statute now uses the word "determined" in place of "defined." "Dividends" is defined to mean "those dividends taxable for federal income tax purposes without regard to the dividend exclusion."

tributions from The Reserve Fund constitute dividends for federal purposes, nevertheless we review this issue.

The plaintiffs contend that a regulated investment company is properly regarded as a conduit for federal tax purposes, and so distributions made to the plaintiffs should retain the same character as interest as when received by The Reserve Fund. The parties have agreed that The Reserve Fund invests only in interest bearing instruments and obligations and distributes the proceeds of such investment activities to its account holders on a daily basis. A review of the federal tax scheme shows that the shareholders are not always taxed on distributions from the regulated investment company as though the distributions were received directly from the source from which the company derives them. Although the character of capital gain was "flowed-through" to the shareholders, before 1976 there was no flow-through treatment for tax-exempt interest, and consequently, distributions of the tax exempt interest by a regulated investment company were taxable income to the shareholders. 4 U.S. Code Cong. & Ad. News (1976), p. 4240. The Tax Reform Act of 1976, P.L. 94-455 § 2137, affords flow-through treatment to tax exempt interest if certain conditions are met.[2] If

---

[2] P.L. 94-455 § 2137, as it relates to exempt interest dividends, is now codified in 26 U.S.C. § 852 (b) (5) (B) (1976):

"(5) EXEMPT-INTEREST DIVIDENDS.—If, at the close of each quarter of its taxable year, at least 50 percent of the value (as defined in section 851(c)(4) ) of the total assets of the regulated investment company consists of obligations described in section 103(a) (1), such company shall be qualified to pay exempt-interest dividends, as defined herein, to its shareholders.

(A) DEFINITION.—An exempt-interest dividend means any dividend or part thereof (other than a capital gain dividend) paid by a regulated investment company and designated by it as an

the interest income of a regulated investment company "flowed-through" to shareholders, because of its character as interest, there would have been no need for Congress to have enacted this amendment. "We should not and do not suppose that Congress intended to enact unnecessary statutory amendments." *Uptagrafft* v. *United States,* 315 F.2d 200, 204 (4th Cir. 1963); see *Continental Illinois National Bank & Trust Co.* v. *United States,* 403 F.2d 721, 724 (Ct. Cl. 1968), cert. denied, 394 U.S. 973, 89 S. Ct. 1456, 22 L. Ed. 2d 752 (1969). The plaintiffs do not contend that the distributions they received qualify as tax exempt interest dividends under 26 U.S.C. § 852 (b) (5) (B) (1976).[3]

exempt-interest dividend in a written notice mailed to its shareholders not later than 45 days after the close of its taxable year. If the aggregate amount so designated with respect to a taxable year of the company (including exempt-interest dividends paid after the close of the taxable year as described in section 855) is greater than the excess of—

(i) the amount of interest excludable from gross income under section 103(a)(1), over

(ii) the amounts disallowed as deductions under sections 265 and 171(a)(2),

the portion of such distribution which shall constitute an exempt-interest dividend shall be only that proportion of the amount so designated as the amount of such excess for such taxable year bears to the amount so designated.

(B) TREATMENT OF EXEMPT-INTEREST DIVIDENDS BY SHARE-HOLDERS.—An exempt-interest dividend shall be treated by the shareholders for all purposes of this subtitle as an item of interest excludable from gross income under section 103(a)(1). Such purposes include but are not limited to—

(i) the determination of gross income and taxable income,

(ii) the determination of distributable net income under subchapter J,

(iii) the allowance of, or calculation of the amount of, any credit or deduction, and

(iv) the determination of the basis in the hands of any shareholder of any share of stock of the company."

[3] P.L. 94-455 § 2137 is effective for tax years beginning after December 31, 1975. The present case concerns the tax year ending December 31, 1975.

The result we reach is entirely consistent with the defendant's treatment of savings bank dividends, which the defendant considers as interest, and hence, nontaxable. Such distributions are considered interest for federal income tax purposes. 26 U.S.C. § 591 (1976);[4] 26 U.S.C. § 116 (c) (1) (1976);[5] 26 U.S.C. § 6049 (1976).[6]

[4] 26 U.S.C. § 591 (1976). "DEDUCTION FOR DIVIDENDS PAID ON DEPOSITS.

In the case of mutual savings banks, cooperative banks, and domestic building and loan associations and other savings institutions chartered and supervised as savings and loan or similar associations under Federal or State law, there shall be allowed as deductions in computing taxable income amounts paid to, or credited to the accounts of, depositors or holders of accounts as dividends or interest on their deposits or withdrawable accounts, if such amounts paid or credited are withdrawable on demand subject only to customary notice of intention to withdraw."

[5] 26 U.S.C. § 116 (1976). "PARTIAL EXCLUSION OF DIVIDENDS RECEIVED BY INDIVIDUALS.

(a) EXCLUSION FROM GROSS INCOME.

Effective with respect to any taxable year ending after July 31, 1954, gross income does not include amounts received by an individual as dividends from domestic corporations, to the extent that the dividends do not exceed $100. If the dividends received in a taxable year exceed $100, the exclusion provided by the preceding sentence shall apply to the dividends first received in such year.

. . .

(c) SPECIAL RULES FOR CERTAIN DISTRIBUTIONS.

For purposes of subsection (a)—

(1) Any amount allowed as a deduction under section 591 (relating to deduction for dividends paid by mutual savings banks, etc.) shall not be treated as a dividend."

[6] 26 U.S.C. § 6049 (1976). "RETURNS REGARDING PAYMENTS OF INTEREST.

(a) REQUIREMENT OF REPORTING.

(1) IN GENERAL.

Every person—

(A) who makes payments of interest (as defined in subsection (b) ) aggregating $10 or more to any other person during any calendar year.

. . .

shall make a return according to the forms or regulations prescribed by the Secretary or his delegate, setting forth the

We answer "yes" to the question reserved.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.

---

aggregate amount of such payments and such aggregate amount includible in the gross income of any holder and the name and address of the person to whom paid or such holder.

. . .

(b) INTEREST DEFINED.

  (1) GENERAL RULE.

  For purposes of subsections (a) (1) and (2), the term 'interest' means—

. . .

(C) amounts (whether or not designated as interest) paid by a mutual savings bank, savings and loan association, building and loan association, cooperative bank, homestead association, credit union, or similar organization, in respect of deposits, investment certificates, or withdrawable or repurchasable shares . . . ."