WATERBURY MOTOR LEASE, INC., ET AL. *v.* TAX COM-
MISSIONER OF THE STATE OF CONNECTICUT

ENGINEERED SINTERINGS AND PLASTICS COMPANY,
INC. *v.* TAX COMMISSIONER OF THE STATE
OF CONNECTICUT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, JS.

Argued October 5—decision released December 20, 1977

*J. Warren Upson,* for the appellants (plaintiffs in the first case and plaintiff in the second case).

*Richard Greenberg,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the appellee (defendant in each case).

*Jeffrey Mines* filed a brief as amicus curiae in each case.

HOUSE, C. J.   Both of these cases came to this court on stipulations of fact and pursuant to reservations as requested by the parties in each action. Practice Book §§ 738, 739.   Although the cases were

brought separately by different parties, they have reached our docket simultaneously, were argued at the same session and involve related issues. We have, therefore, decided to consider them in a single opinion.

Both of the plaintiffs appealed to the Court of Common Pleas after hearings, pursuant to § 12-421 of the General Statutes, at which the defendant state tax commissioner denied each of their requests for refunds of sales taxes paid under protest. The cases were not tried in the Court of Common Pleas because there were no disputed issues of fact. The parties in each case stipulated as to the facts and the questions which they wished to have reserved for the advice of this court. The questions asked in the *Waterbury Motor Lease, Inc.*, case are printed in footnote 1. Those asked in the *Engi-*

---

[1] "1. Are the provisions of Article XIV, Section First, of the Constitution of the United States prohibiting the denial of the equal protection of the laws violated by the provisions of Public Act 75-213 of the State of Connecticut in that said Act imposes no sales tax upon motor vehicles bought in Connecticut after July 1, 1975, and leased to a Connecticut lessee and imposes a sales tax upon the rental payments for such motor vehicle *but* does impose a sales tax upon the rental payment by a Connecticut lessee upon which a sales tax had been previously imposed by the State and duly paid and included as part of the cost of the vehicle in computing rental payments.

"2. Are the provisions of Section 20, Article First, of the Constitution of the State of Connecticut violated by the provisions of Public Act 75-213 of the State of Connecticut in that said Act imposes no sales tax upon motor vehicles bought in Connecticut after July 1, 1975, and leased to a Connecticut lessee and imposes a sales tax upon the rental payments for such motor vehicle *but* does impose a sales tax upon the rental payment by a Connecticut lessee upon motor vehicles purchased in Connecticut prior to July 1, 1975, upon which a sales tax had been previously imposed by the State and duly paid and included as part of the cost of the vehicle in computing rental payments."

*neered Sinterings and Plastics Company, Inc.,* case are printed in footnote 2. Basically, the plaintiffs challenge the constitutionality of certain provisions of 1975 Public Acts, No. 75-213, entitled "An Act Concerning Increased State Revenues" (hereinafter referred to as the act) which extensively revised the Sales and Use Tax Act, chapter 219 of the General Statutes.[3] More particularly, they argue that while the act created a new classification (i.e., lessees) of persons subject to the sales and

[2] "1. Are the provisions of Article XIV, Section First of the Constitution of the United States prohibiting the denial of the equal protection of the laws violated by the provisions of Public Act 75-213 of the State of Connecticut in that said Act imposes no use tax upon equipment brought into Connecticut after July 1, 1975, and leased to a Connecticut lessee for use in Connecticut and imposes a sales tax upon the rental payments for such equipment *but* does impose a sales tax upon the rental payments by a Connecticut lessee upon equipment brought into Connecticut prior to July 1, 1975, upon which a use tax had been previously imposed by the State and duly paid and included as part of the 'cost' of the equipment in computing rental payments.

"2. Are the provisions of Section 20, Article First, of the Constitution of the State of Connecticut violated by the provisions of Public Act 75-213 of the State of Connecticut in that said Act imposes no use tax upon equipment brought into Connecticut after July 1, 1975, and leased to a Connecticut lessee for use in Connecticut and imposes a sales tax upon the rental payments for such equipment *but* does impose a sales tax upon the rental payments by a Connecticut lessee upon equipment brought into Connecticut prior to July 1, 1975, upon which a use tax had been previously imposed by the State and duly paid and included as part of the 'cost' of the equipment in computing rental payments."

Because the phrase "after July 1, 1975" and not "from July 1, 1975" is used in the questions reserved herein for our advice, we too have used "after July 1, 1975."

[3] Chapter 219 of the General Statutes contains the sales and use tax statutes: §§ 12-406 to 12-432a. The provisions of 1975 Public Acts, No. 75-213, referred to in the reserved questions have now been incorporated into §§ 12-407, 12-408 and 12-411 of the General Statutes revised to 1977.

The 1975 Public Acts, No. 75-213, §§ 15-41, revised the following sections of chapter 219: § 12-407 (2, 3, 7-9, 11, 12, 15); § 12-408

use tax which may have a "rational basis," such a classification is unconstitutional because it treats some lessees "differently." The classification which they attack was created by the expansion of the "sale," "selling," "purchase," "purchasing," and "gross receipts" definitions to include the rental or leasing of tangible personal property. The plaintiffs claim that by virtue of the expansion, the imposition sections, § 12-408 for the sales tax and § 12-411 for the use tax, thereafter subjected them to double taxation. The act imposed a 7 percent sales tax on the total amount of payment or periodic payments received after July 1, 1975, for leasing or rental in Connecticut of tangible personal property. The act also provided that (1) any equipment brought into Connecticut and leased to a Connecticut lessee for use in Connecticut after July 1, 1975, was exempt from a use tax, and (2) purchases of tangible personal property after July 1, 1975, made exclusively for leasing or rental are purchases for resale and thus exempt from the sales tax. Thus, after July 1, 1975, the only applicable sales tax on a leasing transaction is that imposed on the rental payments received under the lease or rental agreement.

The parties stipulated and agreed to the following facts: The plaintiff Waterbury Motor Lease, Inc. (hereinafter referred to as Motor Lease) is a Connecticut corporation engaged in the business of buying motor vehicles from Connecticut sellers

(1); § 12-410 (1, 4); § 12-411 (1–3, 8–12); § 12-412 (k); § 12-413 (1); § 12-414 (2, 3); § 12-415 (6, 7); § 12-416 (1); § 12-425 (3); § 12-425a; § 12-426 (3–5); § 12-430 (5) of the General Statutes, respectively, effective July 1, 1975. Although there have been numerous revisions of chapter 219 since 1975 Public Acts, No. 75-213, they have no bearing on the questions presented by the reservations.

and leasing them to Connecticut lessees for extended periods (usually two years) pursuant to lease agreements. For several years prior to July 1, 1975 (the effective date of the challenged revisions), Motor Lease had purchased a substantial number of vehicles, paid the required sales tax to the seller, and recouped the cost of the sales tax by incorporating it in the formula used to compute the total rent provided for in the lease agreements to lessees. On January 2, 1974, Motor Lease purchased a 1974 Oldsmobile at the sale price of $5369.97, with a sales tax of $247. A lease was entered into with the lessee, Engineered Sinterings and Plastics Company, Inc. (hereinafter referred to as E.S.P.), a Connecticut corporation engaged in the production and sale of items made of either plastic or sintered metals. E.S.P. executed a twenty-four month lease at the monthly rent of $290. The rent included reimbursement for the sales tax payment originally paid by Motor Lease as part of its cost for the car.

In October, 1975, Motor Lease remitted to the defendant tax commissioner a check for $1102.51, representing a 7 percent sales tax on all rental payments received by it for the quarter ending on September 1, 1975. The payment was made under protest and accompanied by a letter stating that the payment would be the basis for a refund claim. The remittance included $116.28 which was the 7 percent tax which Motor Lease had collected from E.S.P. The defendant tax commissioner subsequently denied both E.S.P.'s and Motor Lease's requests for refunds of the 7 percent sales tax paid on the rental payments. Motor Lease subsequently appealed the defendant's decision to the Court of Common Pleas which in turn reserved the stipulated questions to this court.

E.S.P. further complains in its separate action that in 1974 it executed two five-year lease agreements for presses with C.I.T. Leasing Corporation (hereinafter referred to as C.I.T.) of New York City. The computed cost of one of the leases was $79,325, to which was added a sales or use tax of $5156.13. Rental payments on the total $84,481.13 were computed to be $1840 per month. E.S.P. was billed by C.I.T. for a sales tax on the rental payments on the two presses for the quarter ending September 30, 1975. E.S.P. paid to C.I.T. a total of $640.59, representing the sales taxes on the rental payments. C.I.T. in turn paid a like amount to the defendant. In November, 1975, E.S.P. requested a refund of this amount which the defendant denied. Upon appeal to the Court of Common Pleas, the questions previously cited in footnote 2 were reserved to this court.

The questions reserved for advice in the *Motor Lease* case, briefly stated, are whether the provisions of the act which impose a sales tax on "the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term of any such lease or rental occurring" after July 1, 1975, on which property a sales tax had been previously paid as a result of the initial pre-July 1, 1975, motor vehicle purchases, yet do not impose a sales tax on post-July 1, 1975, motor vehicle purchases made exclusively for subsequent leasing, are violative of the equal protection clauses of the constitution of Connecticut, article first, § 20, or of section 1 of the fourteenth amendment to the constitution of the United States. As we have most recently stated in *Miller* v. *Heffernan,* 173 Conn. 506, 509, 378 A.2d 572, citing *Horton* v.

*Meskill,* 172 Conn. 615, 639, 376 A.2d 359; and *State* v. *Rao,* 171 Conn. 600, 601, 370 A.2d 1310: "These equal protection provisions have often been held to have a like meaning, imposing similar constitutional limitations." Before discussing the merits of the claims of Motor Lease, we first note the relevant portions of the act which bear on the issues presented.

Section 15 of the act amended subsection 2 of § 12-407 by redefining the words "sale" and "selling" to include "(k) the leasing or rental of tangible personal property of any kind whatsoever, including but not limited to motor vehicles, linen or towels, machinery or apparatus, office equipment and data processing equipment." To the extent that Motor Lease rents motor vehicles to lessees, it performs a "selling" function within the purview of this section. Section 17 of the act amended subsection 7 of § 12-407 by defining the words "purchase" and "purchasing" to include "(f) any leasing or rental of tangible personal property." Section 19 of the act amended subsection 9 of § 12-407 by redefining the word "gross receipts" to include "the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term of any such lease or rental occurring after the effective date of this act."

These changes became significant as applied to Motor Lease by operation of the sales tax imposition section, § 12-408, which was amended by § 23 of the act to read, in part: "For the privilege of making any sales as defined in subsection (2) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of seven per cent of the gross receipts

of any retailer from the sale of all tangible personal
property."[4] It is clearly apparent that the General
Assembly thereby expanded the types of transac-
tions to be subjected to sales taxes so that the
leasing or renting of tangible personal property
became a taxable event after July 1, 1975, the effec-
tive date of the act. It is also provided that reim-
bursement for the sales tax imposed by this section
"shall be collected by the retailer [Motor Lease]
from the consumer."[5] General Statutes § 12-408 (2).
Also, § 16 of the act amended subsection 3 of
§ 12-407 to exempt any purchaser (including a
lessor) from the imposition of a sales tax on a
transaction where the property is purchased for
resale or leasing, provided that the purchaser
obtains the appropriate certificate to the effect that
the property is purchased for resale or lease.

---

[4] Motor Lease is a "retailer" within the meaning of this section
by virtue of §§ 20 and 21 of the act.

"[1975 Public Acts, No. 75-213] Sec. 21. Subsection (12) of
section 12-407 of the general statutes is repealed and the following
is substituted in lieu thereof: (12) 'Retailer' includes: . . . (f)
Every seller rendering any service described in any of the subdivi-
sions of section 15 of this act."

"[1975 Public Acts, No. 75-213] Sec. 20. Subsection (11) of sec-
tion 12-407 of the general statutes is repealed and the following is
substituted in lieu thereof: (11) 'Seller' includes every person
engaged in the business of selling tangible personal property or
rendering any service described in any of the subdivisions of sec-
tion 15 of this act. . . ." See also Regs., Conn. State Agencies
§ 12-426-25 (a) (37 Conn. L.J., No. 27, p. 10.)

[5] As we previously noted in *Fusco-Amatruda Co.* v. *Tax Commis-
sioner*, 168 Conn. 597, 599, 362 A.2d 847, the term "consumer" is not
defined by the statute. Since the definition of "gross receipts," as
revised by § 19 of the act, includes "the total amount . . . received
for leasing or rental," it is logical to infer that such leasing or rental
presupposes the existence of a lessee who is leasing. The application
of common sense; *Wiegand* v. *Heffernan*, 170 Conn. 567, 582, 368
A.2d 103; leads us to conclude that lessees are consumers within the
meaning of the statute.

Shortly after the enactment of 1975 Public Acts, No. 75-213, the defendant promulgated § 12-426-25 of the regulations of Connecticut State Agencies,[6] effective December 8, 1975. 37 Conn. L.J., No. 27, p. 13.

In *Miller* v. *Heffernan*, 173 Conn. 506, 509, 378 A.2d 572, we recently reaffirmed our adherence to the principle that "[w]here legislation neither containing a suspect classification nor impinging upon a fundamental right is challenged on equal protection grounds, the burden is on the complaining party to establish that the statutory distinction is without rational basis." We have held this standard to be "even more stringent where the challenged legislation pertains to taxation." Ibid. In challenging the act's validity, the plaintiff has the burden of overcoming the presumption of the legislation's constitutionality. *Wiegand* v. *Heffernan,* 170 Conn. 567, 579, 368 A.2d 103; citing *Stern* v. *Stern,* 165 Conn. 190, 195, 332 A.2d 78; *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678. As we noted in *Kellems* (pp. 487–88), quoting from *Madden* v. *Kentucky,* 309 U.S. 83, 88, 60 S. Ct. 406, 84 L. Ed 590, " 'in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most

---

[6] The regulation; 37 Conn. L.J., No. 27, p. 10; sought to implement the application of the sales and use tax as provided by the act. It was adopted and promulgated by the defendant pursuant to the authority granted him by § 12-426 of the General Statutes as revised by § 40 of the act and in conformity with the pertinent sections of the Uniform Administrative Procedure Act, chapter 54 of the General Statutes.

explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' "

Motor Lease does not dispute that the power of taxation resides in the legislature; *Lublin* v. *Brown*, 168 Conn. 212, 227, 362 A.2d 769; nor that the legislature has the power to choose the subject matter of taxation and fix the method and extent of the tax. Id., 221; *International Business Machines Corporation* v. *Brown*, 167 Conn. 123, 355 A.2d 236. It does argue, however, that despite the legitimacy of the act's objective "to produce tax revenue," this is not "a justifiable reason for [the act's alleged] discriminatory treatment among [the class'] members." It contends that even though "there might have been a 'rational basis' for the classification" created, i.e., lessees; General Statutes §§ 12-407 (2), (8), (9), (12) (f); there is no such "rational basis for discriminating against a portion of this class, i.e., those whose leases antedated the effective date of the Act." The fact that periodic payments received after July 1, 1975, for the leasing of tangible personal property (irrespective of the date the lease was executed) are taxed is not disputed. General Statutes §§ 12-407 (9), 12-408 (1). Motor Lease claims to be aggrieved, however, because purchasers of equipment exclusively for leasing after July 1, 1975, are exempt from paying a sales tax on the initial purchases; General Statutes §§ 12-407 (3), 12-410; Regs., Conn. State Agencies § 12-426-25; whereas purchasers (including Motor Lease) of equipment for leasing prior to July 1, 1975, paid a sales tax on the initial purchase (which they in turn passed on to their lessees). Motor

Lease argues that nothing occurred as of July 1, 1975, "to justify discriminatory treatment as between lessees."

It is not for the court to determine whether the prescribed mode of taxation is wise; *Bassett* v. *Rose,* 141 Conn. 129, 104 A.2d 212; but, rather, whether the classification is reasonable, "resting upon 'some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989." *Miller* v. *Heffernan,* supra, 510. Keeping in mind the great flexibility afforded legislatures in selecting the subjects of taxation and applying the standard as stated in *Miller* v. *Heffernan,* supra, 511, we must conclude that the classification "is neither capricious nor arbitrary"; *Hartford Fire Ins. Co.* v. *Brown,* 164 Conn. 497, 507, 325 A.2d 228. Within the particular class selected for payment of the tax, namely, lessees, the members are treated equally and uniformly. We find no denial of equal protection of the laws.

We find no ambiguity in the language of the statutes in question nor, despite the contrary claims of Motor Lease, do we find that the imposition of the prescribed taxes results in double taxation which, in any event, is not per se unconstitutional. *Hartford-Connecticut Trust Co.* v. *O'Connor,* 137 Conn. 267, 272, 76 A.2d 9; *State* v. *Murphy,* 90 Conn. 662, 666, 98 A. 343.

Motor Lease asserts that the act itself and the statutory construction adopted by the defendant, as reflected by § 12-426-25 of the regulations promulgated by him, subjected it to double taxation. It argues that it paid a sales tax on its initial January

2, 1974, purchase of an Oldsmobile which it subsequently leased to E.S.P. for two years and was then forced to pay an additional sales tax on rental payments received from E.S.P. for the quarter ending on September 1, 1975. Other courts have found double taxation to exist "only where there is the imposition of the same tax by the same taxing power upon the same subject matter." *Spencer* v. *Snedeker*, 361 Pa. 234, 238, 64 A.2d 771, cited approvingly by the Supreme Court of Iowa in *Ramco, Inc.* v. *Director, Department of Revenue*, 248 N.W.2d 122, 124 (Iowa). In any event, where there are two separate taxpayers and two separate transactions, even though a single subject matter is involved, any taint of double taxation is removed. *Boise Bowling Center* v. *State*, 93 Idaho 367, 370, 461 P.2d 262; *Lakewood Lanes, Inc.* v. *State*, 61 Wash. 2d 751, 380 P.2d 466; *Gandy* v. *State*, 57 Wash. 2d 690, 359 P.2d 302.

Prior to the act, a lessor purchasing tangible personal property was subject to either the sales tax if he purchased the property in Connecticut, or to the use tax if he purchased the property out-of-state to lease in Connecticut. The tax imposed was based on either purchasing (sales tax) or using (use tax). The tax imposed by 1975 Public Acts, No. 75-213, is upon the rental of tangible personal property and is a separate and distinct tax imposed upon different taxpayers, lessees, and the events which give rise to it are distinct in kind and time. The fact that Motor Lease passed on to its lessee, E.S.P., the expense of the tax which it had paid in purchasing the vehicle does not make the tax imposed by the act upon the lessees a double tax. Motor Lease was subjected to only one tax as was E.S.P.

The answer to questions one and two of footnote one is "no."

The questions reserved for advice in the E.S.P. case are whether the provisions of the act which impose a sales tax on "the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term of any such lease or rental occurring" after July 1, 1975; General Statutes §§ 12-407 (9), 12-411 (1); on which a use tax had been previously paid because the equipment was brought into Connecticut and leased for use to a Connecticut lessee prior to July 1, 1975, but does not impose a use tax (§ 12-413 [1]) on equipment brought into Connecticut and leased for use to a Connecticut lessee after July 1, 1975, are violative of the same two constitutional provisions as claimed by Motor Lease—the constitution of Connecticut, article first, § 20, or section 1 of the fourteenth amendment to the constitution of the United States.

It is unnecessary to enumerate specifically the extensive revisions of the use tax imposition section (§ 12-411) affected by §§ 26 through 32 of the act. It is sufficient to note that E.S.P. claims that these changes along with the additional exemptions created by § 34 of the act (amending subsection 1 of § 12-413) have subjected it to double taxation and denied it equal protection of the laws.

The arguments advanced by E.S.P. parallel those raised by Motor Lease, which we have already discussed, and are not persuasive for the same reasons noted in that case. The sales and use tax statutes although distinct are complementary; *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 299, 57 A.2d 128; and "designed to promote equality of

taxation on personal property whether purchased in state or out of state." *United States* v. *Sullivan,* 270 F. Sup. 236, 243 (D. Conn.), aff'd, 398 F.2d 672, rev'd on other grounds, 395 U.S. 169, 89 S. Ct. 1648, 23 L. Ed. 2d 182. Previously, if property was purchased out-of-state to lease in Connecticut, the tax imposed was based on using the property in Connecticut. The tax now imposed by 1975 Public Acts, No. 75-213, is upon the rental of such property. The fact that C.I.T. passed on to their lessee, E.S.P., the expense of the tax they paid in bringing the press into Connecticut for leasing does not make the tax imposed on the rental, a double tax. C.I.T. was subject to one tax as was E.S.P.

We are similarly unpersuaded by E.S.P.'s vigorous argument that certain members of the lessee classification (those whose leases antedated the effective date of the act) are treated "differently." The argument is identical to that raised by Motor Lease. It is similarly without merit.

The answer to questions one and two in footnote two is "no."

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.