HARRIS DATA COMMUNICATIONS, INC. *v.* GERALD J.
HEFFERNAN, TAX COMMISSIONER OF THE STATE
OF CONNECTICUT

COTTER, C. J., BOGDANSKI, SPEZIALE, PETERS and HEALEY, Js.

Argued November 13, 1980—decision released February 17, 1981

*J. Danford Anthony, Jr.,* with whom, on the brief,
were *Michael Macris* and *Robert G. Siegel,* for the
plaintiff.

*Ralph G. Murphy,* assistant attorney general, with
whom, on the brief, was *Carl R. Ajello,* attorney
general, for the defendant.

SPEZIALE, J. This case came to this court on a
stipulation of facts and pursuant to a reservation
from the Superior Court as requested by the par-

ties. Practice Book §§ 3133, 3134. In May, 1975, the General Assembly approved extending the Connecticut Sales and Use Tax Act to include the leasing of tangible personal property. Public Acts 1975, No. 75-213, §§ 15, 17, 19. With exceptions not relevant here, the act took effect on July 1, 1975. Public Acts 1975, No. 75-213, § 53. The issue before us is the applicability of the sales and use tax statute to payments received by the plaintiff lessor in June, 1975, for the use of equipment by various lessees after July 1, 1975. The question reserved for the advice of the court is printed in footnote 1.

The parties stipulated and agreed to the following facts: The plaintiff, Harris Data Communications, Inc., was engaged in the business of renting computer equipment. Between 1972 and 1974 the plaintiff entered into leases with certain Connecticut lessees. Those leases extended through calendar year 1975 and called for monthly rental payments. In June, 1975, the plaintiff and the lessees agreed that the lessees could prepay six months' rent and that such prepayment would entitle the lessee to a discount in the form of a reduction in the total rentals that otherwise would become payable during the six month period. Before July 1, 1975, the plaintiff received, pursuant to the prepayment agreements, rental payments of $152,135.10 on which no sales and use tax was paid. With respect to those payments the defendant tax commissioner later assessed $10,649.46 additional taxes plus $1597.42

---

[1] "Where rental payments with respect to tangible personal property leased prior to July 1, 1975, for periods extending beyond July 1, 1975, were prepaid prior to July 1, 1975, at a discount, in advance of the dates after July 1, 1975, on which they would otherwise have become due and owing, pursuant to agreements between the lessor and the lessee permitting such prepayments to be made, were such payments subject to the Connecticut sales and use tax?"

deficiency interest. The plaintiff paid to the tax commissioner the additional taxes and interest, timely filed a written claim for refund, and subsequently appealed to the Court of Common Pleas[2] from the commissioner's decision denying the refund. This reservation ensued.

Prior to the enactment of Public Acts 1975, No. 75-213, the sales and use tax statute did not apply to the leasing or rental of tangible personal property. The 1975 Act, in pertinent part, expanded the definitions of "sale" and "gross receipts" to read: "'Sale' and 'selling' mean and include: . . . the leasing or rental of tangible personal property of any kind whatsoever, including but not limited to motor vehicles, . . . office equipment and data processing equipment"; Public Acts 1975, No. 75-213, § 15; General Statutes § 12-407 (2) (j); and "'Gross receipts' means . . . the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term of any such lease or rental occurring after the effective date of this Act . . . ." Public Acts 1975, No. 75-213, § 19; General Statutes § 12-407 (9) (with "on or after July 1, 1975" substituted for "after the effective date of this Act"; see Public Acts 1975, No. 75-567, § 67).

The plaintiff argues that the phrase "on or after July 1, 1975" in the definition of "gross receipts" modifies the term "payments received" rather than "the term of any such lease or rental." We disagree; to accept the plaintiff's argument would lead to impermissible linguistic juggling by restructuring

---

[2] The Court of Common Pleas has been merged into the Superior Court; it is from the Superior Court that this reservation is taken.

and distorting the actual words of the statute, and thus change their clear and unequivocal meaning.

It is well recognized that, whenever possible, a modifier should be placed next to the word it modifies. Strunk & White, The Elements of Style, p. 24. If the sentence were read to connect the date with "received" the result would be: "Gross receipts means . . . the total amount of payment or periodic payments received [on or after July 1, 1975] for leasing or rental of tangible personal property for the term of any such lease or rental *occurring*," or "[g]ross receipts means . . . the total amount of payment or periodic payments received [*occurring on or after July 1, 1975*] for leasing or rental of tangible personal property for the term of any such lease or rental." (Emphasis added.)

Either construction would make the word "occurring" superfluous. No word in a statute should be considered as surplusage. *Winchester* v. *Connecticut State Board of Labor Relations*, 175 Conn. 349, 355, 402 A.2d 332 (1978); *State* v. *Briggs*, 161 Conn. 283, 287, 287 A.2d 369 (1971). Therefore, it is clear that the statute applies to all payments which are received for the use of tangible personal property where the use is to occur on or after July 1, 1975. This is consistent with General Statutes § 12-408 which imposes the tax "[f]or the privilege of making any sales as defined in subsection (2) of section 12-407." As quoted above, § 12-407 (2) includes leasing or rental within the definition of "sale." The statute is directed at the period of use under the lease, not when the lease was signed nor when the rental payments were received. *Waterbury Motor Lease, Inc.* v. *Tax Commissioner*, 174 Conn. 51, 59, 61, 381 A.2d 552 (1977); see *Kellems*

v. *Brown,* 163 Conn. 478, 505–507, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973).

There is no ambiguity in the language of the statute. *Waterbury Motor Lease, Inc.* v. *Tax Commissioner,* supra, 62. It does not become ambiguous merely because the parties contend for differing meanings. *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 508, 363 A.2d 1055 (1975). The intent of the legislature is to be found in the meaning of the words of the statute; that is, in what the legislature actually *did* say, not in what it *meant* to say. *Doe* v. *Manson,* 183 Conn. 183, 438 A.2d 859 (1981); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978). Where the language of the statute is unambiguous, we are confined to the intention expressed in the actual words used and we will not search out any further intention of the legislature not expressed in the statute. *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 133, 355 A.2d 236 (1974); *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128 (1948). In the absence of ambiguity it is unnecessary to resort to principles of statutory construction such as the resolution of ambiguity in favor of the taxpayer. Compare *Stone* v. *Sullivan,* 154 Conn. 498, 503–504, 227 A.2d 76 (1967).

Finally, it should be noted that the tax commissioner has issued regulations stating that rental payments received before July 1, 1975 are taxable if they are for a leasing term on or after July 1, 1975.[3] Because this regulation is in accord with the

---

[3] "TRANSITIONAL RULES. The tax applies to all leases of tangible personal property existing on July 1, 1975. No credit against the tax is given for any sales or use tax paid by the lessor on such property purchased prior to July 1, 1975. The tax is imposed on the

language of the statute, and the statute governs, we need not address the plaintiff's claims concerning the regulation. *Modugno* v. *Tax Commissioner,* 174 Conn. 419, 421–22, 389 A.2d 745 (1978); *Austin* v. *Housing Authority,* 143 Conn. 338, 348–49, 122 A.2d 399 (1956).

The rental payments made pursuant to the prepayment agreements are subject to the Connecticut sales and use tax. The answer to the question quoted in footnote 1 is "yes."

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.

total amount of rental payments received on or after July 1, 1975. The rental is deemed received when it is due and owing. The lessor must collect and pay the tax on the total amount of payment or periodic payments received for leasing or rental of tangible personal property for any term on or after July 1, 1975 *whether or not such amount is prepaid and received prior to said date.*" (Emphasis added.) Regs., Conn. State Agencies § 12-426-25 (b).