## John Harper et al. *v.* Tax Commissioner of the State of Connecticut
### (12581)

Peters, C. J., Healey, Shea, Dannehy and Callahan, Js.

Argued February 14—decision released March 18, 1986

*John B. Willard,* for the appellants (plaintiffs).

*Ralph G. Murphy,* assistant attorney general, with whom were *Robert L. Klein,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

Peters, C. J. The issue in this case is the taxability, under the state capital gains tax, of the sale of patent rights on an installment basis. The defendant, the tax commissioner of the state of Connecticut, assessed a

tax deficiency for the 1975 tax year against the plaintiffs, John F. Harper[1] and Margaret Harper. The trial court, having heard the parties, dismissed the plaintiffs' appeal. The plaintiffs then took a timely appeal to this court. We find no error.

There is no dispute about the underlying facts. The plaintiff John F. Harper sold patent rights in 1956 and 1959. Because of these sales, the plaintiff incurred federal tax liability. He reported the income received from the sales as a capital gain; 26 U.S.C. § 1235 (a);[2] and elected to pay the federal taxes on an installment basis. 26 U.S.C. § 453.[3] At the time of the patent sales, Connecticut did not tax capital gains.

---

[1] The plaintiff John F. Harper died while this appeal was pending. John B. Willard, the executor of his estate, has been named as substitute plaintiff. For the sake of convenience, we will, however, continue to refer to the parties as they were named in the trial court.

[2] At the time in question, 26 U.S.C. § 1235 (a) provided in relevant part: "SALE OR EXCHANGE OF PATENTS

"(a) GENERAL.—A transfer . . . of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset . . . regardless of whether or not payments in consideration of such transfer are—

"(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(2) contingent on the productivity, use, or disposition of the property transferred."

[3] At the time in question, 26 U.S.C. § 453 provided in relevant part: "INSTALLMENT METHOD

"(a) DEALERS IN PERSONAL PROPERTY.—

"(1) IN GENERAL.—Under regulations prescribed by the Secretary, a person who . . . disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

"(2) TOTAL CONTRACT PRICE.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall

Connecticut first enacted a temporary capital gains tax in 1969. General Statutes § 12-505 et seq.[4] Because § 12-506 expressly taxed only sales "occurring after July 1, 1969," the tax commissioner promulgated § 12-518-1 (d) (iii) of the Regulations of Connecticut State Agencies.[5] That regulation, in accordance with the statute, stated that "gain which is recognized subsequent to July 1, 1969, from the sale or exchange of property on or before July 1, 1969, shall be excluded." The commissioner relied on the regulation in refund-

not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1)."

[4] General Statutes (1969 Sup.) § 12-505 provided: "Sec. 12-505. DEFINITIONS. When used in this chapter, unless the context otherwise requires: 'Taxpayer' means each and every individual resident in this state who has earnings received, credited or accrued in any taxable year from gains from the sale or exchange of capital assets which exceed the sum of one hundred dollars; 'taxable year' means the same accounting period as the taxpayer's taxable year for federal income tax purposes or that portion of such year as falls within the period July 1, 1969, through June 30, 1971; 'tax commissioner' or 'commissioner' means the state tax commissioner; 'gains from the sale or exchange of capital assets' means 'net gain' as that amount is computed under the internal revenue code of the United States, except that no reduction shall be allowed for loss carry-overs or loss carry-backs."

General Statutes (1969 Sup.) § 12-506 provided: "Sec. 12-506. IMPOSITION OF TAX. (a) A tax is hereby imposed at the rate of six per cent on all gains from the sale or exchange of capital assets occurring after July 1, 1969, which gains have been earned, received, accrued or credited to the taxpayer during his taxable year. This tax shall not be applicable to gains on the sales or exchanges of capital assets occurring after June 30, 1971.

"(b) The tax imposed by this chapter shall be upon the gains from the sale or exchange of capital assets earned, received, accrued or credited by or to the taxpayer during the taxable year less one hundred dollars, except those persons permitted to file joint returns under the internal revenue code of the United States shall have the same privilege under this chapter, but the tax shall be imposed on the amount in excess of two hundred dollars. The tax imposed by this chapter shall in no instance be less than five dollars for each taxable year in which the taxpayer is subject to the tax."

[5] Regs., Conn. State Agencies § 12-518-1 (d) (iii) (effective December 2, 1969) provided: "(d) In computing 'net gain' . . . (iii) gain which is recognized subsequent to July 1, 1969, from the sale or exchange of property on or before July 1, 1969, shall be excluded."

ing a capital gains tax payment tendered by the plaintiffs for the tax year 1970. The capital gains tax was reenacted in amended form in 1971, at which time it was broadened to include dividends and to extend its termination indefinitely.[6]

In 1973, the legislature enacted Public Acts 1973, No. 73-356, to enlarge the scope of the capital gains tax

[6] As amended in 1971, General Statutes § 12-505 provided: "Sec. 12-505. DEFINITIONS. When used in this chapter, unless the context otherwise requires: 'Taxpayer' means each and every individual resident in this state who has earnings received, credited or accrued in any taxable year from gains from the sale or exchange of capital assets, or from dividends subject to tax under this chapter; 'taxable year' means the same accounting period as the taxpayer's taxable year for federal income tax purposes or that portion of such year as commences after December 31, 1970; 'dividends' means those dividends taxable for federal income tax purposes without regard to the dividend exclusion; 'tax commissioner' or 'commissioner' means the state tax commissioner; 'gains from the sale or exchange of capital assets' means net gains as defined for federal income tax purposes, after due allowance for losses and holding periods, but not nonrecognition of gains, all as provided under federal income tax law, except that no deduction shall be allowed for losses carried over from years prior to 1971, provided a taxpayer reporting capital gains on the instalment basis for federal income tax purposes need not include in his investment income instalments, except for interest, derived from transactions completed before January 1, 1971. 'Resident' means an individual: (1) Who is domiciled in this state; provided, if an individual maintains no permanent place of abode in this state, and maintains a permanent place of abode elsewhere, and spends in the aggregate not more than thirty days of the taxable year in this state, he shall be deemed not a resident; or (2) who is not domiciled in this state but maintains a permanent place of abode in this state and is in this state for an aggregate of more than one hundred eighty-three days of the taxable year, unless he, not being domiciled in this state, is in the armed forces of the United States; 'person' means the taxpayer or any pledgee, assignee, receiver, referee, trustee, conservator, guardian or other fiduciary of the taxpayer acting for the taxpayer."

As amended in 1971, General Statutes § 12-506 provided: "IMPOSITION OF TAX. (a) A tax is hereby imposed at the rate of six per cent on all dividends and gains from the sale or exchange of capital assets occurring after December 31, 1970, which have been earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year subject to the exemptions allowed in subsection (c) of this section.

"(b) The tax imposed by this chapter shall in no instance be less than five dollars for any year the taxpayer is subject to the tax."

itself.[7] As amended, General Statutes § 12-505 defined taxable gain as "gain as determined for federal income

---

[7] As amended in 1973, General Statutes § 12-505 provided: "Sec. 12-505. DEFINITIONS. When used in this chapter, unless the context otherwise requires: 'Taxpayer' means each and every individual resident in this state or a husband and wife, both of whom are residents in this state and who file a single federal income tax return jointly, who has or have earnings received, credited or accrued in any taxable year from gains from the sale or exchange of capital assets; 'taxable year' means the same accounting period as the taxpayer's taxable year for federal income tax purposes or that portion of such year as either commences when a taxpayer becomes a resident or ends when a taxpayer ceases to be a resident of this state; 'tax commissioner' or 'commissioner' means the state tax commissioner; 'gains from the sale or exchange of capital assets' means net gain as determined for federal income tax purposes, after due allowance for losses and holding periods, from sales or exchanges of capital assets or assets treated as capital assets, or from transactions or events taxable to the taxpayer as such sales or exchanges, and being the net amount includable in the taxpayer's adjusted gross income, with respect to all such sales, exchanges, transactions, or events, under the provisions of the internal revenue code in effect for the taxable year; 'resident' means an individual: (1) Who is domiciled in this state; provided, if an individual maintains no permanent place of abode in this state, and maintains a permanent place of abode elsewhere, and spends in the aggregate not more than thirty days of the taxable year in this state, he shall be deemed not a resident; or (2) who is not domiciled in this state but maintains a permanent place of abode in this state and is in this state for an aggregate of more than one hundred eighty-three days of the taxable year, unless he, not being domiciled in this state, is in the armed forces of the United States; 'person' means the taxpayer or any pledgee, assignee, receiver, referee, trustee, conservator, guardian, custodian or other fiduciary of the taxpayer acting for the taxpayer."

As amended in 1973, General Statutes § 12-506 provided: "Sec. 12-506. IMPOSITION OF TAX. (a) A tax is hereby imposed at the rate of six per cent on all net gains from the sale or exchange of capital assets which have been earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year subject to the exemptions allowed in section 12-506c and section 12-506f, when applicable.

"(b) Any individual resident whose net gains from the sale or exchange of capital assets amount to one hundred dollars or less in any taxable year or any husband and wife, both of whom are residents, who file a single return jointly for federal income tax purposes and whose net gains from the sale or exchange of capital assets amount to two hundred dollars or less in any taxable year, shall not be subject to the tax imposed by subsection (a) of this section, and shall not be required to file any return under the provisions of section 12-508, for such year."

tax purposes, after due allowance for losses and holding periods, from sales or exchanges of capital assets or assets treated as capital assets, or from transactions or events taxable to the taxpayer as such shares or exchanges . . . . " The legislature also amended General Statutes § 12-506 to impose a tax on "the sale or exchange of capital assets which have been earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year," expressly deleting the former temporal restriction on when the underlying sales or exchanges had occurred. The commissioner did not, however, amend regulation § 12-518-1 (d) (iii) until 1980.[8]

For the tax year 1975, the chief tax examiner determined that the plaintiffs were subject to Connecticut capital gains tax for royalty payments they received in 1975 from the patent sales made during 1956 and 1959. The plaintiffs asked the commissioner to reconsider their deficiency assessment, claiming that the commissioner's ruling in regulation § 12-518-1 (d) (iii) had never been overruled and precluded their liability. The commissioner relied on the 1973 amendment of §§ 12-505 and 12-506 in disallowing this request for withdrawal of the deficiency assessment. The plaintiffs then appealed to the Superior Court pursuant to General Statutes § 12-522. The trial court agreed with the commissioner. This appeal ensued.

The plaintiffs' appeal contains three assignments of error. Two of these claims of error relate to the taxability of patents as capital assets and the third relates to the taxability of gains derived from pre-1969 transactions of sale. We find no error.

I

The plaintiffs' first two claims of error challenge the conclusion of the commissioner and the trial court that

---

[8] Regs., Conn. State Agencies § 12-518-1 was repealed on December 18, 1980.

patent sales fall within the statutory ambit of capital assets. The plaintiffs urge us to construe § 12-505 to exclude noncapital assets and to hold that patents are not capital assets. On such a construction, the plaintiffs' receipt of installment payments from their patent sales would, according to the plaintiffs, be entirely exempt from Connecticut tax.

The plaintiffs' argument is refuted by the language of § 12-505 and by long-standing precedents of this court. Section 12-505 defines taxable gains as "net gain as determined for federal income tax purposes . . . from (A) sales or exchanges of capital assets or assets treated as capital assets . . . or (B) from transactions or events taxable to the taxpayer as such sales or exchanges . . . under the provisions of the Internal Revenue Code in effect for the taxable year . . . ." This court has consistently held that when our tax statutes refer to the federal tax code, "federal tax concepts are incorporated into state law." *The B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 7, 490 A.2d 991 (1985); *Yaeger* v. *Dubno,* 188 Conn. 206, 210, 211–12, 449 A.2d 144 (1982); *Woodruff* v. *Tax Commissioner,* 185 Conn. 186, 191, 440 A.2d 854 (1981); *Peterson* v. *Sullivan,* 163 Conn. 520, 525, 313 A.2d 49 (1972); *Kellems* v. *Brown,* 163 Conn. 478, 518–19, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 489–93, 115 A.2d 455 (1955), appeal dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811 (1956); *McKesson & Robbins, Inc.* v. *Walsh,* 130 Conn. 460, 461–64, 35 A.2d 865 (1944). It is undisputed that the federal tax code, in 26 U.S.C. §§ 1235 (a) and 453 (a), treats the sale of patents as a sale of capital assets. See *Fawick* v. *Commissioner of Internal Revenue,* 436 F.2d 655, 661 (6th Cir. 1971). The trial court was therefore correct in its conclusion that the sale of patents is likewise a sale of capital assets for the purposes of § 12-505.

## II

The plaintiffs' third claim of error challenges the conclusion of both the commissioner and the trial court that §§ 12-505 and 12-506, as amended in 1973, impose a capital gains tax on payments received by the plaintiffs in 1975 on account of their pre-1969 patent sales. This claim of error is a limited one. The plaintiffs do not argue that the legislation governing capital gains taxation in 1975 expressly excludes pre-1969 transactions, nor do they maintain that the legislation is in constitutional jeopardy for failing to contain such an exclusion. They focus instead on the specific language of regulation § 12-518-1 (d) (iii) which excluded from taxable net gain any "gain which is recognized subsequent to July 1, 1969, from the sale or exchange of property on or before July 1, 1969 . . . ." They claim that, just as that regulation excused their tax liability in 1970, so it continued to afford them shelter in 1975. They argue that they were entitled to rely on its continued viability because it was neither rescinded by the commissioner nor disapproved by the legislature.

The crux of the plaintiffs' position is that the regulation finds support in statutory language that survives the 1973 amendment of §§ 12-505 and 12-506. In their reconstruction of the statutes, they argue that the three capital gains tax statutes enacted in 1969, 1971 and 1973 expressly address only the time of the realization of a taxable gain and not the time of the underlying transaction giving rise to the subsequent gain. The commissioner's regulation, on this theory, was neither required by the 1969 act nor invalidated by its subsequent amendments.

The plaintiffs' theory cannot be reconciled with the language of the statutes in 1969 and thereafter. In 1969, § 12-506 imposed a capital gains tax "on all gains

from the sale or exchange of capital assets occurring after July 1, 1969, which gains have been earned, received, accrued or credited to the taxpayer during his taxable year. This tax shall not be applicable to gains on the sales or exchanges of capital assets occurring after June 30, 1971.'' Since the statute expressly made gains taxable in the year of their receipt, it was entirely reasonable for the commissioner to construe the phrase ''occurring after July 1, 1969'' to modify ''sale or exchange.'' The basic structure of the statute was not changed by the 1971 amendment, in which the legislature substituted the date of December 31, 1970, for the date of July 1, 1969, and made the duration of the tax indefinite. Gains from pre-1969 transactions continued to enjoy a statutory exemption, while gains from all post-1969 transactions were taxable, originally under the 1969 act and subsequently under the 1971 act. See *Peterson* v. *Sullivan,* supra, 524. In 1973, however, the legislature abolished the exemption for pre-1969 transactions when it amended § 12-506 to delete the phrase ''occurring after December 31, 1970.'' As a result, after 1973, the capital gains tax reached all gains in the year of their receipt regardless of the time of the underlying transaction of sale or exchange. This statutory history demonstrates that the legislature, in enacting and amending the statutes governing capital gains taxes, fully understood the distinction between the timing of realized gains and the timing of underlying transactions, and made provision for both. The regulation promulgated by the commissioner was consistent with the legislation enacted in 1969 and 1971 but was in fundamental conflict with § 12-506 as it stood after 1973.

When two statutes are in irreconcilable conflict, the later enactment is presumed to have repealed the earlier one by implication. *State* v. *Jenkins,* 198 Conn. 671, 679, 504 A.2d 1053 (1986); *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 521–22,

468 A.2d 574 (1983). It follows logically that a later statute also repeals a prior irreconcilable administrative regulation.[9] An administrative regulation can have no authority beyond the statute that it purports to implement. *Harris Data Communications, Inc.* v. *Heffernan,* 183 Conn. 194, 198–99, 438 A.2d 1178 (1981); *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 363, 417 A.2d 358 (1979); *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 604, 362 A.2d 847 (1975); *Austin* v. *Housing Authority,* 143 Conn. 338, 348–49, 122 A.2d 399 (1956). Although the commissioner would have been well advised to have rescinded his regulation promptly after the effective date of the 1973 amendment of § 12-506, his failure to do so does not allow the plaintiffs to rely on an exemption from taxation that the legislature had determined to eliminate.[10] At best, the failure to rescind the regulation might have created an ambiguity in the statute, but an argument to that effect would not avail the plaintiffs because exemptions from otherwise taxable income are a matter of legislative grace and hence are strictly construed against the taxpayer. *The B. F. Goodrich Co.* v. *Dubno,* supra, 8–9; *Yaeger* v. *Dubno,* supra, 212. The trial court correctly concluded that the plaintiffs were liable for the deficiency that had been assessed against them with regard to their 1975 capital gains tax.

---

[9] As the trial court noted, the record does not indicate that the regulation in question was ever approved or disapproved by the General Assembly's legislative review committee. General Statutes § 4-170a. There is no other current legislative mechanism for review of administrative regulations.

[10] On the present record, the plaintiffs have demonstrated no reliance in fact on the regulation, since the tax plan with regard to an installment treatment of the 1956 and 1959 patent rights long antedated the enactment of any of the relevant statutes and the regulation. Even had there been demonstrable reliance in fact, it is highly doubtful that an administrator's conduct would ever create an enforceable estoppel against tax collection. See *Zoning Commission* v. *Lescynski,* 188 Conn. 724, 731–32, 453 A.2d 1144 (1982); *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 353, 365 A.2d 1093 (1976).

There is no error.

In this opinion the other judges concurred.