[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This tax appeal presents a straightforward question of law involving the sales and use tax. The plaintiff, Bell Atlantic Systems Leasing International, Inc. ("Bell Atlantic"), leases tangible personal property to its customers. The lease payments are sometimes late. When this happens, is Bell Atlantic obliged to report the payments in the month that they are due and owing or may it report them in the month that they are actually received? For the reasons explained below, I conclude that the payments are to be reported in the month of receipt.
Both parties — i.e. Bell Atlantic and the Commissioner of Revenue Services — have filed motions for summary judgment. Neither party has filed any affidavit or other document in support of its motion. "Because the summary judgment motion is designed to pierce the formal allegations of the pleadings, it normally is not made or opposed on the basis of the pleadings alone." 10A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure § 2722 (1983) (footnote omitted). Since the motions here have been made solely on the basis of the pleadings, the plaintiff's motion is equivalent to a motion for judgment on the pleadings, and the defendant's motion is equivalent to a motion to strike for failure to state a claim upon which relief can be granted. This is procedurally awkward under our rules because our Practice Book has no exact equivalent of Fed.R.Civ.P. § 12(c) allowing judgment on the pleadings and because the filing of an answer — as has been done here — normally precludes the consideration of a motion to strike. The unusual posture of this case was extensively discussed at the CT Page 9886 hearing. In response to the court's concerns, both parties made certain factual stipulations and legal concessions on the record. As a result of these stipulations and concessions, both the parties and the court are persuaded that there is indeed no genuine issue as to any material fact. Under these circumstances, judgment may appropriately enter as a matter of law. Practice Book § 384.
Conn. Gen. Stat. § 12-408(1) imposes a tax "at the rate of six percent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail or from the rendering of any services constituting a sale in accordance with subsection (2) of section 12-407." The leasing or rental of tangible personal property is made taxable by § 12-407 (2)(j). The taxes imposed on such transactions are due monthly. §12-414(1).
The term "gross receipts" is statutorily defined as "the total amount of the sales price, of the retail sales of retailers . . . or the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term of any such lease or rental occurring on or after July 1, 1975." Section 12-407(9). This definition draws a sharp distinction between "sales price" on the one hand, and "payments received for leasing or rental," on the other. A "sales price" need not actually be received to be included in a retailer's gross receipts. Thus, as the Commissioner points out, if a retailer sells an item in return for a promise to pay in the future, the sales tax is payable at the time of sale regardless of when, or even whether, the sales price is actually paid. See DeVillePhotography, Inc. v. Bowers, 159 N.E.2d 443, 448 (Ohio 1959). But, under § 12-407(9), lease payments are treated differently. They are treated as gross receipts only when they are "received."
The statutory use of the term "received" is of decisive importance. To "receive" means "[t]o take into possession and control; accept custody of; collect." Black's Law Dictionary
1268 (6th ed. 1990). See Hallenbeck v. Getz, 63 Conn. 385, 388,28 A. 519 (1893). Section 12-407 is a tax imposition statute, so any ambiguity in this term must be construed in favor of the taxpayer. Prudential Property Casualty Insurance Co. v.Bannon, 233 Conn. 243, 248, 658 A.2d 567 (1995). Strictly construed, the term cannot sensibly encompass the unpaid lease payments at issue in this case. CT Page 9887
Certain concessions made by the Commissioner at and after the hearing reinforce this conclusion. At the hearing, the Commissioner disavowed any reliance, for purposes of this case, on the doctrine of constructive receipt. That doctrine, a mainstay of federal income tax law, "treats as taxable income which is unqualifiedly subject to the demand of a taxpayer on the cash receipts and disbursements method of accounting, whether or not such income has actually been received in cash." Ross v.Commissioner, 169 F.2d 483, 490 (1st Cir. 1948) (Frankfurter, J.).See Treas. Reg. § 1.451-2(a). The Commissioner expressly declines to assert that the unpaid lease payments at issue here were unqualifiedly subject to the demand of the taxpayer. This means, and it was so conceded at the hearing, that the Commissioner seeks to characterize payments as "received," for purposes of § 12-407(9), when those payments have neither been actually received nor constructively received. This is far too vigorous a stretch for tax imposition language that is to be strictly construed.
This otherwise clear picture was thrown into some temporary confusion at the hearing when it was revealed, in response to a question from the bench, that Bell Atlantic keeps its books on the accrual method. In the context of federal income tax law, this fact would be dispositive, for Congress requires taxable income to "be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." 26 U.S.C. § 446(a). Similarly, the Connecticut insurance companies, hospital and medical services corporations tax statutes; Conn. Gen. Stat. §§ 12-201, et seq.; contain a definition of the term "received" that expressly refers to "the method of accounting customarily employed by the taxpayers." Conn. Gen. Stat. § 12-201. In contrast, however, the Connecticut sales and use tax statutes do not refer to the taxpayer's method of accounting. At the request of the court, the parties filed supplemental briefs addressing the impact, if any, of Bell Atlantic's method of accounting on the outcome of this case. In response, both parties agreed that the taxpayer's method of accounting is not a relevant consideration. The Commissioner specifically states that, "The decision of business managers to select either the cash or accrual method of accounting is not pertinent to the application of the Connecticut Sales and Use Tax." Supplemental Brief at 1. Given this concession, the Commissioner cannot successfully contend that the payments question have been "received." CT Page 9888
The Commissioner's argument that lease payments are to be deemed "received" in the month when they are due and owing relies on two principal authorities. First, the Commissioner relies on a statement in Conn. Agencies Regs. § 12-426-25(b) that "[t]he rental is deemed received when it is due and owing." Although the statement just recited does indeed support the Commissioner's position when considered in isolation, that persuasive force is dissipated when the statement's context is considered. Section § 12-426-25 consists of multiple subsections. Subsection (a) is entitled "General rule." Subsection (b) is entitled "Transitional rules." The statement relied upon by the Commissioner is contained in subsection (b). The titles of these subsections are an aid to construction. P.X. Restaurant, Inc. v.Town of Windsor, 189 Conn. 153, 160, 454 A.2d 1258 (1983). Moreover, when read in context, the text of subsection (b) plainly addresses the particular problem presented by lease payments contracted for prior to July 1, 1975 — the date on which lease payments became subject to the sales and use tax; 1975 Conn. Acts No. 75-213, §§ 15 53 — but actually made after that date. See Harris Data Communications, Inc. v. Heffernan,183 Conn. 194, 196-97, 438 A.2d 1178 (1981). The statement relied upon by the Commissioner is not only entitled as a transitional rule; it is plainly intended to be a transitional rule. It can be fairly assumed that if the statement in question had been intended to be a general rule, it would have been placed in subsection (a) which is expressly entitled "General rule." In any event, "[a]n administrative regulation can have no authority beyond the statute that it purports to implement." Harper v. TaxCommissioner, 199 Conn. 133, 142, 506 A.2d 93 (1986). The statutes that § 12-426-25 purports to implement are the sales and use tax statutes, which tax lease payments only when they are "received." As has already been discussed, those statutes, which must be strictly construed, provide no textual or doctrinal support for the Commissioner's interpretation.
The second authority relied upon by the Commissioner is the Supreme Court's decision in Harris Data. Harris Data, however, does not purport to consider the question presented here. That case presented a problem appropriately addressed by the Commissioner's transitional rules. The taxpayer in Harris Data
entered into a number of lease agreements prior to July 1, 1975. Those leases extended through the calendar year 1975 and called for monthly rental payments. In June 1975, the taxpayer agreed that the lessees could prepay six months' rent.183 Conn. at 195. The Supreme Court held that these prepaid payments were CT Page 9889 subject to the sales and use tax because the use for which the payments were made occurred on or after July 1, 1975.
In the course of its decision, Harris Data states that, "The statute is directed at the period of use under the lease, not when the lease was signed nor when the rental payments were received." 183 Conn. at 197. The Commissioner seizes upon this language, for obvious reasons. But, properly construed, this language does not help the Commissioner. Harris Data was concerned with the issue of taxability vel non. The prepaid lease payments at issue in that case were, by definition, already in hand, so the question of the time of taxability, as opposed to the question of taxability itself, was simply not before the court. (While the taxpayer in Harris Data might have attempted to report the prepayments in June 1975, the month of actual receipt; see Hyde Park Realty, Inc. v. Commissioner, 211 F.2d 462,463 (2d Cir. 1954) (holding that advance rents are federally taxable In the year in which the recipient takes unrestricted possession of them, even though they do not accrue until a subsequent year); it does not appear that any such attempt was made.) This conclusion is reinforced by Harris Data's citation of Waterbury Motor Lease, Inc. v. Tax Commissioner, 174 Conn. 51,59, 61, 381 A.2d 552 (1977). 183 Conn. at 197. Waterbury MotorLease, like Harris Data, was concerned with "the types of transactions to be subjected to sales taxes." 174 Conn. at 59. As in Harris Data, the question of the timing of taxability was simply not before the Court.
In this case, in contrast, the question of timing is before the Court. In order to resolve this question, the statutory term "received" must be construed and applied. When strictly construed, as it must be, this term requires either actual receipt or, at a minimum, constructive receipt. Neither form of receipt has occurred in this case. Under these circumstances the Commissioner cannot prevail. Harris Data, properly read, does not require a different result.
For the reasons set forth above, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied. Judgment shall enter for the plaintiff. CT Page 9890